# RUTLEDGE CO-OPERATIVE ASSOCIATION, INC.,
## *v.* E. AUSTIN BAUGHMAN, Commissioner
### of Motor Vehicles.

*Private Carriers—Public Transportation of Freight—Control by Legislature.*

Code, art. 56, sec. 259, providing that corporations and associations engaged in the transportation of freight or merchandise for their stockholders or members, whether on the co-operative plan or otherwise, shall be subject to the requirement of section 258, that a permit from the Public Service Commission be procured by each owner of a motor vehicle used in public transportation of freight or merchandise over the highways of the state, is a constitutional exercise of legislative power.      pp. 299-307

The Legislature has the right to impose upon a private carrier, engaged in the transportation of freight and merchandise upon the highways for hire, as upon a common carrier, the requirement that it obtain a permit from the Public Service Commission.                                      p. 307

*Decided June 9th, 1927.*

Appeal from the Circuit Court for Harford County, In Equity (Preston, J.).

Bill by the Rutledge Co-operative Association, Inc., against E. Austin Baughman, Commissioner of Motor Vehicles. From a decree for defendant, plaintiff appeals. Affirmed.

The cause was argued before Bond, C. J., Urner, Offutt, Parke, and Sloan, JJ.

*S. A. Williams* and *Edwin H. W. Harlan,* for the appellant.

*Thomas H. Robinson, Attorney General,* and *Herbert Levy, Assistant Attorney General,* for the appellee.

OFFUTT, J., delivered the opinion of the Court.

The Rutledge Co-operative Association, Inc., the appellant in this case, is a co-operative association incorporated under the Public General Laws of Maryland, Bagby's Code, art. 23, secs. 419-446. Its purpose, as declared in its charter, is "to market and transport milk and other farm products for its members and to procure and deliver for its members such materials and supplies as they may need; provided, however, nothing in this certificate shall be taken as authorizing the corporation hereby created to engage in the business of transportation, except as a carrier for its own members." Its capital stock is $10,000, divided into five hundred shares of $20 each, and each of the stockholders is a member of the association. Article 23, section 419, of the Code.

In furtherance of the purpose stated in its certificate of incorporation, it purchased a truck, and prepared to collect and transport to market milk produced on farms carried on by its members. Before engaging in that business it procured from the Commissioner of Motor Vehicles of Maryland license tags, authorizing it to operate its truck over the highways of Maryland, but it failed to procure from the Public Service Commission of Maryland the permit required by sections 258 and 259, article 56, of the Code, as a condition precedent to its operation over such highways of its truck for the transportation of freight for hire. It nevertheless began to operate the truck over the state highways, to collect milk from its members and to transport it to and deliver it in the City of Baltimore, and to charge and receive payment therefor. Thereupon the Commissioner of Motor Vehicles caused the arrest of the driver of said truck, and announced that any person operating it to transport milk or other freight over such highways without the permission of the Public Service Commission would be prosecuted. To prevent such threatened action the appellant filed in the Circuit Court for Harford County, in equity, a bill for an injunction restraining the Commissioner of Motor Vehicles from prosecuting the charge preferred against its truck

driver, and restraining him, his agents, employees, and servants, from interfering with its operation of said truck.   The respondent filed a combined answer and demurrer to that bill, which it later amended.   A demurrer to the amended answer was overruled, testimony was taken, and the bill dismissed.   From that decree the Rutledge Co-operative Association, Inc., appealed.

It is apparent from this statement of the case that the controlling question presented by the appeal is whether section 259, article 56 of the Code, is a valid enactment.

Section 258, article 56, in part provides: "It shall be the duty of each owner of a motor vehicle to be used in the public transportation of merchandise or freight, operating over state, state aid, improved county roads, and streets and roads of incorporated towns and cities in the State of Maryland, to secure a permit from the Public Service Commission of Maryland to operate over said roads and streets, and present same to the motor vehicle commissioner annually at the time and according to the method and provisions prescribed by law for owners of all other motor vehicles to make an application in writing for registration with the Commissioner of Motor Vehicles."   Section 259, *Ibid,* provides that: "Corporations, groups of individuals and associations engaged in the transportation of freight or merchandise of their stockholders, shareholders or members, whether on the co-operative plan or otherwise, shall be included within the provisions of this sub-title."

If the section last quoted is a valid enactment, it necessarily follows that the appellant is entitled to no relief, and its bill was properly dismissed.   Because, by section 258, every owner of a motor vehicle used in the public transportation of merchandise or freight over improved state or county roads must before so using it secure from the Public Service Commission a permit authorizing such use, and, by section 259, every corporation engaged in the business of transporting freight or merchandise for its stockholders or members, whether on the co-operative plan or otherwise, is engaged in

public transportation within the meaning of section 258. And since the appellant was so engaged and had not secured the required permit, it violated the provisions of section 258, *Ibid,* and it became the duty of the Commissioner of Motor Vehicles to prosecute it for such violation. Sections 264, 263, *Ibid.*

There were in issue before the trial court certain questions of fact in the case, as to whether the appellant was not incorporated as a mere device to evade the force of the statute, and as to whether it was not a common carrier at common law, but as the determination of these issues cannot affect the validity of the statute, it is unnecessary to refer particularly to them, and for the purpose of this case we will assume that appellant was incorporated in good faith for the purposes stated in its certificate of incorporation, and that its business is not that of a common carrier.

The power of the Legislature to require common carriers, operating motor vehicle trucks over state roads for the transportation of freight, to secure the permission of the Public Service Commission, before engaging in that business, was recognized by this Court in *Public Service Commission v. Western Maryland Dairy Co.,* 150 Md. 647. But the appellant contends (1) that while that may be true, the Legislature had no power to require a private carrier to secure such permission, (2) that it is a private carrier and as such is entitled to operate its trucks over the highways of the state for the transportation of the goods, wares and merchandise of its members with or without the permission of the Public Service Commission, and (3) that the Legislature has not the power to convert it from a private to a common carrier without its assent, and that section 259, article 56, of the Code, attempts to do that and is therefore void.

Conceding for the purpose of this opinion that the appellant is a private carrier in its relation to the general public, and that the Legislature had not the power to convert its status as such into that of a common carrier, it does not follow that section 259 is void. Because that section does not

in terms or by implication affect the status of the appellant as a private carrier, nor does it enlarge or change the scope of its corporate powers, functions, or duties in the operation of the business in which it is engaged. But what it does is to impose upon the operation of that business the same limitations and restrictions which it imposes upon common carriers. And the question therefore is, Has the Legislature the power to require a private carrier, before operating a business such as that conducted by appellant over the public highways of the state, to first secure the permission of the Public Service Commission? The power conferred by these two sections is prohibitory, not regulatory, and the question may be further narrowed to this: Has the Legislature the power to authorize the Public Service Commission to prohibit the appellant from transporting freight for hire for its members over the public highways of the state, when in its judgment such prohibition is essential to the public welfare.

We have said that the statute does not change the status of the appellant as a private carrier at common law in so far as its relations to the general public are concerned, because the test generally recognized for distinguishing a private from a common carrier is that a common carrier is obliged within the limits of its ability to serve all who apply, while a private carrier is under no such obligation. *Michie on Carriers,* 312; *Hutchinson on Carriers,* par. 48, etc. And as the statute under consideration does not impose upon the appellant any broader duty in respect to such service than that stated in its charter, it does not convert the appellant into a common carrier at common law. But it does affect its right to use the public highways of the state in the operation of its business of transporting freight thereover for hire. That part of the statutory law of the state which deals with the regulation of the service and rates of common carriers, and defines that term, is found under the head of "Corporations" (article 23, sections 346-418, of the Code), while the statute under consideration is found under the title "Licenses," sub-title "Public Freight Motor Vehi-

cles" (article 56, section 258), and although there is no
actual connection between the statutes codified in the article
dealing with corporations, and those codified in that deal-
ing with public freight motor vehicles, they both look to the
same end.   The purpose of the former was to insure reason-
able rates and adequate service from common carriers, while
the purpose of the latter was to aid that purpose by pre-
venting destructive competition, whether by private or com-
mon carriers operating over public highways.

The purpose of the Public Service Commission law was
considered by this Court in *Crisfield v. Ches. & Pot. Tel.
Co.,* 131 Md. 446, where it was said: "In the present case
material assistance will be derived from the consideration
of that which was predominant in the mind of the Legis-
lature of 1910, by which both the Public Service Commis-
sion Law and the Charter of Crisfield were enacted.   The
Legislature of 1910 took up, and for the first time in this
state, enacted a law for the purpose of regulating in various
ways the class of corporations or firms conducting public
utilities.   The grant of power as contained in the act, while
in general language, was intended to be extremely compre-
hensive.   There was a specific jurisdiction given to it over
telephone lines and telephone companies; provision was
made for the making of complaints, either by individuals
or corporations, and also the power that the commission
created by the act might, upon its own initiative regulate
the charges demanded, exacted, charged or collected, and its
power extended throughout the state, into every munici-
pality, county or political division, so that the said com-
mission should, in the interest of the public, be invested with
ample powers for regulation, both as to service and charges,
of all public utilities operating within the state.   It was a
jurisdiction determined by the subject matter, rather than
any other consideration.   If an action of the commission
was deemed erroneous or beyond its power, a right of appeal
was given to the courts."

If that purpose is to be accomplished, it is essential that

the commission have the power to prohibit such competition between common carriers as would prevent the rendition of adequate public service by those engaged in it.  That power was conferred upon it with respect to common carriers by rail by section 379, article 23 of the Code, which prohibited such carriers from exercising any right or franchise not theretofore exercised, without first having obtained the permission of the Public Service Commission, with respect to gas and electric companies by section 390, *Ibid.*, and by section 258, article 56, *Ibid.*, it was extended to the owners of motor vehicles used in transporting freight over improved state and county roads.  The statute last referred to was unquestionably called for by conditions growing out of the recent development of transportation of freight by motor vehicles over improved state highways, and the same reasons which called for the exercise of the power with respect to transportation by rail demanded its extension to other carriers offering service of the same character by motor vehicles over state highways.  That business has assumed such vast proportions, it has become of such vital importance to the convenience, prosperity, and comfort of so many persons, and the necessity for adequate service and reasonable rates so urgent, that it is quite as essential that the power to restrain indiscriminate and ruinous competition, which would make the maintenance of such service and rates impracticable, should be exercised with respect to such service, as with respect to any other public service whatever.  *Goldsworthy v. Public Service Commission,* 141 Md. 683; *Restivo v. Public Service Commission,* 149 Md. 37.

But while the earlier statutes had been found sufficient to enable the commission to deal with the operation of common carriers, they were found not to extend to persons engaged in the same character of business, rendering much the same kind of service, and offering competition just as destructive as common law common carriers, but which strictly speaking were not common carriers.  To reach such cases the Act of 1924, ch. 291, codified as sections 258, 259,

of article 56, of the Code, was passed. That act provided (1) that "each" owner of a motor vehicle used in the "public" transportation of freight or merchandise over certain improved highways must, before so using such vehicle, first obtain the permission of the Public Service Commission, and (2) that co-operative associations, whether incorporated or not, engaged in "the transportation of freight or merchandise" for their members or stockholders, shall be "in cluded within the provisions of this sub-title." By that act, therefore, no person may engage in the business of "public" transportation of freight over improved state or county highways, or the streets and roads of incorporated towns and cities within the State of Maryland, without the permission of the Public Service Commission, and the transportation of freight and merchandise by a co-operative corporation for its stockholders is classified as "public transportation." It does not require such a corporation to serve the public indiscriminately, nor impose upon it the obligations of a common carrier, but it does classify and define the character of the business which it carries on. And we think it was within the power of the Legislature to do that. The business in which the appellant is engaged technically and strictly is not that of common carrier, nor on the other hand is it that of a private carrier. It does not serve, or offer to serve, the public indiscriminately, but it does serve any person holding a share of its stock, and since it is authorized to issue five hundred shares of stock, it is quite possible for it to serve all that part of the public residing in the territory in which it operates who desire its service, and thereby starve out and destroy other carriers offering like service on routes established under the sanction of the Public Service Commission, and thus effectively frustrate the purpose and intention of the law. The appellant and its stockholders are different persons and not one and the same person. It has a distinct existence separate and apart from its stockholders, and while they are members of it for the purposes stated in the statute (sections 419-446, article 23,

of the Code), nevertheless for all other purposes its identity is distinct from theirs. *Cook on Corp.*, sec. 1. In serving its stockholders, it is not serving itself, but a group of persons holding one or more shares of its stock. Its earnings from such service are distributable in dividends to its stockholders in proportion to the number of shares held by them, just as the earnings of a railroad company would be distributed to its stockholders. Its business requires it to use for private gain the public highways of the state, which are maintained by the general public. The incidental effects of its operation are identical with those of common carriers operating under section 258, article 56, of the Code, the wear and tear on the highways is the same, the danger to the traveling public is the same, the difficulty of maintaining reasonable rates and adequate service in the face of severe and exhausting competition is the same, and the appropriation of public property for private gain is the same.

Under such conditions, we know of no constitutional principle which prohibits the Legislature from characterizing such a business as public, and in our opinion section 259, article 56, *Ibid.*, which does only that and no more, is a valid exercise of legislative power.

In *Public Service Commission v. West. Md. Dairy*, 150 Md. 646, which, except for the fact that the appellant here is a "co-operative" corporation, is somewhat analogous to this case, it was said: "If the ownership of the milk was in the producer while in transportation, which we think it was, we cannot conceive upon what principle it could be held that the appellee, in the operation of its trucks in the manner stated, is not subject to the supervision of the Public Service Commission of Maryland, and, in holding that the ownership in milk was at such time in the producer, we are not to be understood as holding that upon all the facts of this case the company would be exempt from the provision of said act if it was found that the title to the milk was at that time in the company, as that question need not be decided in the disposition of this case." And in *Goldsworthy v. Pub. Serv. Commn.*, 141 Md. 680, where the appellant contended that he had the

right to transport for hire selected groups of persons over improved state and county roads without securing the permit required by section 251 *et seq.,* article 56, of the Code, it was said: "If it be held that an owner of a motor vehicle can thus relieve himself of complying with the requirement of the law, to obtain a permit from the Public Service Commission, and from being placed in the class of common carriers, it will furnish an easy way to evade the law. If Goldsworthy can say, 'I am not a common carrier; I only carry such persons as Buckell shall desire, or such as may be designated by him,' and keep up that business for an indefinite time, of hauling from a half dozen or twenty or more persons every trip, without being amenable to the law as a common carrier, it would be useless to pass such statutes as we have on the subject." And so in this case, if one desiring to carry on the business of transporting freight for hire over the state highways, without subjecting himself to the supervision of the Public Service Commission, could do so through the simple device of incorporating a co-operative association which would serve every one who would purchase for perhaps a mere nominal sum a share of its stock, the power of the commission to supervise the public transportation of freight over such highways, and to insure reasonable rates and adequate service from persons engaged therein, would be seriously impaired.

It is argued that *Frost Trucking Co. v. Railroad Commn.,* 271 U. S. 589, and *Michigan Pub. Util. Commn. v. Duke,* 266 U. S. 570, are in conflict with these views, and that contention is based upon two propositions: (1) That those cases decide that a private carrier cannot be required to take out a certificate of public convenience as required by section 258, article 56, *supra,* as a condition precedent to transporting freight over state roads; (2) that section 259, *supra,* converts the appellant from a private into a common carrier.

Those propositions cannot in our opinion be maintained, first, because the cases last cited do not decide that a private carrier cannot be required to take out a certificate of public convenience before transporting freight for hire over public highways, but they do decide that the state cannot against

its will convert a private into a common carrier; and, second, the statute under consideration does not affect the status of the appellant as a carrier at all, but provides that no carrier, public or private, shall haul freight for hire over the public highways of the state without first obtaining a permit from the Public Service Commission.   There can be no doubt that the Legislature had the right to impose such a condition upon the use of the highways by common carriers ( *Goldsworthy v. Public Serv. Commn., supra*), and it is equally clear that they may also impose such a condition upon the use of such highways by private carriers for transporting for hire freight or merchandise over them.   The certain and disastrous consequences of any other construction of the legislative power compels that conclusion.   The almost incredible growth of the automobile as an agency for transporting freight and passengers, the size and weight of the vehicles used in such transportation, the inevitable congestion and obstruction of traffic on the public highways arising from unrestricted competition, the increased danger to travelers on such highways occasioned by such congestion, the heavy burden of maintaining at the public expense such highways in reasonable repair, make it imperative that the state should have the power to restrain and restrict competition among persons using such highways for the transportation of passengers or freight for hire, within such limits as will be consistent with the public safety and the financial resources of the state.

Self-preservation, said to be the first law of nature, is the foundation of the police power, and the highest duty owed by a sovereign state to its citizens is to provide for their security, and to protect them in the enjoyment of those comforts and conveniences which they are taxed to provide (12 *C. J.* 907), and the theory that the state is powerless to prevent the appropriation of its highways, dedicated to the use of the entire public, by persons using the same for the transportation of freight or passengers for hire to such an extent that they may be destroyed, or rendered so unsafe that the general public cannot use them except at great peril, is utterly inconsistent with the powers of a sovereign state.

In our opinion, therefore, section 259, of article 56, of the Code, was a valid exercise of legislative power, and as it appears from the record in this case that the appellant at the time its driver was arrested was operating its truck in violation of section 258, *Ibid.,* it follows that the trial court committed no error in dissolving the injunction and dismissing the bill of complaint.

*Decree affirmed, with costs.*