## PARLETT CO-OPERATIVE, INCORPORATED, *v.* TIDEWATER LINES, INCORPORATED.

[No. 26, January Term, 1933.]

406

*Decided March 21st, 1933.*

The cause was argued before BOND, C. J., URNER, ADKINS, OFFUTT, and PARKE, JJ.

*W. Conwell Smith* and *John L. G. Lee,* with whom was *Joseph L. Donovan* on the brief, for the appellant.

*Thomas J. Tingley,* with whom was *Francis Key Murray* and *Jerome A. Loughran* on the brief, for the appellee.

OFFUTT, J., delivered the opinion of the Court.

The Tidewater Lines, Incorporated, is a Delaware corporation engaged in the business of transporting milk and other freight under a permit from the Public Service Commission

of Maryland over these routes: Scaggsville to Highland to Clarksville, via Clarksville Road to Simpsonville, via Simpsonville Road to Elioak, via Cedar Lane thence by Clarksville Road and Frederick Pike to Baltimore; and from Dayton to Baltimore, via Clarksville, Ellicott City, and Frederick Road.

Parlett Co-operative, Incorporated, is a Maryland corporation authorized "to collectively produce, prepare for market, handle, store, and market, and particularly to transport milk and other products of its members, and of acting as the selling and buying agent or both, for its members, and also for any other purposes permitted to such co-operative associations by virtue of the General Laws of the State of Maryland authorizing the formation of co-operative associations." It has a capital stock of $2,000, divided into two hundred shares of $10 each. It operates a truck over a part of the route served by the Tidewater Lines trucks, and transports for hire for its stockholders milk and other freight in competition with Tidewater Lines, Incorporated, but without the permission of the Public Service Commission of Maryland required by Code, art. 56, secs. 258-266 (as amended by Acts 1927, ch. 152, secs. 1, 2).

On November 10th, 1931, the Tidewater Company filed in the Circuit Court for Howard County its bill of complaint against the Parlett Company, in which, after reciting these facts, it charged that the unauthorized operation of the Parlett Company's truck subjected it to unlawful and ruinous competition, and prayed that said corporation be enjoined from transporting freight or merchandise for hire over the routes served by the Tidewater Lines. A demurrer to that bill was sustained, and the plaintiff with the leave of the court filed an amended bill in which it alleged that it was a Delaware corporation, duly qualified to transact business in Maryland, was engaged in the business of transporting for hire passengers and freight between points in Maryland and Pennsylvania and Baltimore City, that all its operations in Maryland were carried on pursuant to permits or certificates of public convenience issued by the Public Service Commis-

sion of Maryland, and that especially under such permits it operated over the routes above described, and that such permits were issued under the provisions of Code, art. 56, secs. 258-266. It then alleged: That the defendant operated a motor vehicle in the transportation of merchandise and freight of its stockholders for hire from a point on the Simpsonville Road to the farm of De Wilton C. Parlett, thence to the Scaggsville-Clarksville Road, where it stops at the milk stand of one Adams at Clarksville, and thence to Baltimore, over the old Frederick Road, carrying or transporting such merchandise and freight between said termini in the said truck or motor vehicle owned and operated by the said respondent to dairies located in the City of Baltimore, in the case of milk so transported, and, in the case of freight transported from Baltimore, to the farms or residences of the various consignees of such freight, being members or alleged to be members of the said co-operative association. That the said respondent has not procured from the Public Service Commission of Maryland any permits or certificates of public convenience and necessity as required by the aforementioned sections 258 to 266, inclusive, of article 56, of the Annotated Code of Public General Laws of the State of Maryland, has not paid the taxes or other public charges required and imposed by the said sections, and is operating in violation of the provisions of said sections and of the laws of Maryland generally relating to the transportation of freight or merchandise for hire. It further stated:

That members of the defendant company protested to the Public Service Commission against the renewal of the permits or certificates issued to the plaintiff permitting it to operate over said routes, and that applications were made for permits authorizing a co-operative association to be formed to operate over the same, but that the protests were overruled and the applications denied. That the defendant nevertheless was formed and did operate over said routes, "thereby depriving your complainant of a considerable volume of business which it would otherwise carry or transport by means of its trucks or vehicles and to which it is lawfully entitled

and which merchandise and freight so carried or transported by the respondent was, prior to the beginning of respondent's operation, carried or transported by the complainant, and that the respondent has therefore materially injured and impaired your complainant's business and property and threatens by a continuance of its aforementioned operation to continue so to do, all to the irremediable loss and damage of the complainant. That prior to the beginning of the operation complained of, by the respondent as above, your complainant was hauling milk for approximately sixty-seven (67) shippers over the routes in question, thirty-three (33) being located on the Scaggsville route and thirty-four (34) on the Dayton route, and that the number of gallons of milk daily carried over the said routes by the complainant was respectively nine hundred and twenty-five (925) gallons and seven hundred and ninety-four (794) gallons and that your complainant's monthly gross revenue therefrom was approximately thirteen hundred and fifty dollars ($1,350). That your complainant is informed and believes that the respondent is now carrying milk for the following shippers heretofore served by the complainant and located on or adjacent to its lines (with the exception of R. Maurer, who is located on complainant's line, but is a new shipper) and carrying the approximate number of gallons, daily, set opposite their respective names:

"Scaggsville Route

| Name | Gallons Per Day |
|------|-----------------|
| J. W. Parlett | 17 gallons |
| D. W. Parlett | 47 gallons |

"Dayton Route

| | |
|------|-----------------|
| C. C. Adams | 35 gallons |
| E. S. Zepp | 35 gallons |
| R. H. Groomes | 34 gallons |
| F. S. Kendall | 66 gallons |
| R. Maurer | 7 gallons |

"That immediately upon learning that the Respondent's Demurrer to the Bill of Complaint filed in this case had been sustained, the following persons, ship-

ping over Complainant's line approximately the number of gallons daily, set opposite their respective names, notified the Complainant that they no longer desired its service, but would ship in the future by the Respondent's truck, the change to be made immediately:

"Dayton Route

| Name | Gallons Per Day |
|------|-----------------|
| D. Blaney | 19 gallons |
| J. F. W. Brown | 12 gallons |
| O. L. Brown | 19 gallons |
| C. B. Zepp | 38 gallons |
| S. T. Nichols | 26 gallons |
| R. W. Lloyd | 14 gallons |
| Frank Westfield | 28 gallons |
| C. Howard | 14 gallons" |

It further charges: "That the complainant's present monthly loss of business by reason of respondent's operations, without including the shippers who have notified it of their intention of leaving it for respondent's line, as above, is approximately two hundred and seventy dollars ($270). That the transfer of milk from complainants lines to respondent's by persons who have already notified complainant of their desire to discontinue its service will increase this figure to approximately four hundred and twenty-five dollars ($425). That complainant has already lost in revenue up to February 1st, 1932, by reason of respondent's operation as above, approximately fifteen hundred and fifty-five dollars ($1,555) and will suffer materially heavier loss in the future, unless the respondent be restrained from operating, as herein prayed. That unless the said respondent be restrained and enjoined by this honorable court from continuing to engage in the transportation of merchandise and freight for hire between the various points and places above referred to, without having first obtained a permit or permits or a certificate or certificates of public convenience and necessity issued by virtue of the orders of the Public Service Commission of Maryland, the complainant's business and property will be

subjected to ruinous and unlawful competition, and that the complainant will suffer irreparable loss and injury not susceptible of adequate compensation in the ordinary courts of law and is without relief except such as may be afforded by a court of equity."

Upon these allegations it renewed its prayer made in the original bill. To that bill the defendant refiled its answer to the original bill, and also a demurrer which it subsequently amended. In its answer it denied all material allegations of the bill except such as were matters of record, and charged that the "complainant has for a long time past wilfully and flagrantly violated the provisions of said laws, by charging excessive and unreasonable rates, by charging unequal rates, and by deliberately and wilfully charging, collecting and receiving rates other than those specified in the schedules of rates and charges filed by it with the Public Service Commission of Maryland, and that the service rendered by the complainant upon the routes referred to it in the bill of complaint has been inadequate, inefficient and carelessly rendered for a long time past, in spite of repeated complaints of its customers."

In its demurrer in final form it stated that:

"Sections 258 to 266, inclusive, of article 56 of the Annotated Code of Public General Laws of Maryland, entitled 'Public Freight Motor Vehicle Law,' as well as sections 346 to 418, inclusive, of article 23 of the Code of Public General Laws of Maryland, by any construction which would render the same applicable to the operations of the Defendant Company are unconstitutional and void for the following reasons, viz:

"(a) Because said laws contravene article 41 of the Declaration of Rights of the Constitution of Maryland, which declares 'that monopolies are odious, contrary to the spirit of a free government and the principles of commerce, and ought not to be suffered.'

"(b) Because the taxes required to be paid thereunder are discriminatory in that they are not payable alike by all users

of the road, and are not uniform as required by article 15 of the Declaration of Rights of the Constitution of Maryland.

"(c) Because the denial to this defendant and its members of the right to haul their milk to market is a denial of the equal protection of the laws, and deprives them of their liberty and property without due process of law in contravention of the 14th Amendment to the Constitution of the United States.

"(d) Because the incorporation of the Defendant Company under the provisions of sections 419 to 446, inclusive, of Article 23 of the Code of Public General Laws of Maryland, as amended by the Acts of 1931, chapter 456, declaring that such Associations shall have power 'to transport the products of its members even though in so doing it may compete with licensed common carriers,' created a contract between the incorporators and members of this Defendant Company on the one hand, and the State of Maryland on the other hand, and that the denial of the enumerated power by any Commission, Court or authority other than the Legislature itself, would impair the obligation of said contract, and would deprive this Defendant and its members of their property without due process of law contrary to the provisions of the Fourteenth Amendment to the Constitution of the United States."

No action was taken on the final demurrer, but the case was heard on bill, answer, and evidence, and, after a hearing, the court signed a decree perpetually enjoining the defendant as prayed in the plaintiff's bill. From that decree this appeal was taken.

The case made out by these pleadings and the evidence, more simply stated, is this: The Tidewater Lines, Incorporated, operates with the approval and sanction of the Public Service Commission of Maryland two truck lines for the transportation of freight between points in Howard County and the City of Baltimore. The Parlett Co-operative, Incorporated, is attempting without the approval or sanction of the commission to operate a truck line over parts of the same route in competition with Tidewater Lines, Incorporated.

Tidewater Lines, Incorporated, contends that in doing that Parlett Co-operative, Incorporated, violates Code, art. 56, secs. 258-266, and deprives it of patronage which it would otherwise receive, to its loss and detriment, and that for that reason it has the right to maintain a bill to enjoin such unlawful and injurious competition.

Parlett Co-operative, Incorporated, on the other hand, contends (1) (a) that it is a private person and not a public carrier, (b) that, being a private and not a public carrier, the State has no power to condition its right to use the public highways of the state, for the transportation of the property of its stockholders for hire, upon public welfare and convenience, and that, as to it, Code, art. 56, secs. 258-266, is in conflict with the Fourteenth Amendment to the Constitution of the United States, unconstitutional and void; (2) that chapter 456 of the Acts of 1931 manifests a legislative intent "denying to the Public Service Commission the right to decide the question of 'public welfare and convenience' adversely to Cooperative Marketing Associations"; and (3) that in no event has the plaintiff shown a case for equitable relief.

Assuming that Code, art. 56, secs. 258-266, is a valid legislative enactment, without pausing to analyze it in detail, it is sufficiently clear that the pleadings and the evidence present a case for equitable relief, so that the controlling questions in the case are (1) the validity of Code, art. 56, secs. 258-266; and (2) whether the Legislature by chapter 456 of the Acts of 1931 intended to exclude co-operative associations from the scope of those provisions of Code, art. 56, secs. 258-266, which require persons engaged in the public transportation of freight over the public highways of the state for hire to first obtain a permit from the Public Service Commission.

The first question has been so recently considered by this court (*Rutledge Co-operative Assn. v. Baughman,* 153 Md. 297, 138 A. 29) that further reference to it would not be called for except for the contention that what was said and decided in that case was in effect overruled by the decision

in *Smith v. Cahoon,* 283 U. S. 553, 51 S. Ct. 582, 587, 75 L. Ed. 1264. But the fallacy of that contention appears from an examination of the two cases. The Florida statute under consideration in the *Cahoon* case undertook to make the right of all persons, saving certain exempted classes, operating motor vehicles over the state highways between fixed termini or over a regular route, regardless of whether such service was public or private in its nature, to so operate such vehicles, depend upon compliance with conditions which could not validly be exacted of a private carrier. The Maryland statute affects only motor vehicle transportation affected by a public interest. The appellant in that case served a single person under an exclusive contract, and there was no controversy as to his status as a private carrier, and the service was in no way affected by a public interest. There the statute was held void because it failed to make any distinction between the right of such a person to use the highways in the course of its business, and the right of one engaged in public transportation to so use them. In this case the statute itself applies only to persons engaged in the "public transportation of merchandise or freight," and, under it, whether a given service is public or private in its nature becomes a judicial rather than a legislative question, to be determined upon the facts and not by legislative definition or formula. In that case the question was whether the statute itself was valid, while in this the question is whether the appellant's transportation business is of such a nature as to bring it within the terms of a statute which affects only persons engaged in the "public transportation of merchandise or freight." The controlling question in the *Cahoon* case was whether the statute could validly impose upon persons operating as private carriers the functions and duties of common carriers without their consent, and in that respect it was analogous to *Frost & F. Trucking Co. v. Railroad Commission,* 271 U. S. 583, 46 S. Ct. 605, 609, 70 L. Ed. 1101. But it does not decide that a co-operative company such as the appellant in this case is necessarily a private carrier, for that question was not in the case. Nor is there anything in

the opinion inconsistent with the following statement in the *Frost* case: "That, if the state may not subject the plaintiffs in error to the provisions of the act in respect of common carriers, it will be within the power of any carrier, by the simple device of making private contracts to an unlimited number to secure all the privileges afforded common carriers without assuming any of their duties or obligations. It is enough to say that no such case is presented here, and we are not to be understood as challenging the power of the state, or of the Railroad Commission under the present statute, whenever it shall appear that a carrier, posing as a private carrier, is in substance and reality a common carrier, to so declare and regulate his or its operations accordingly."

There is a closer analogy between the statute here involved and that under consideration in *Stephenson v. Binford,* 287 U. S. 251, 53 S. Ct. 181, 184, 77 L. Ed. 203. For, while the statute analyzed there differs from that with which we are dealing, in that it expressly differentiated and separately classified common carriers and private contract carriers in respect to the application of its provisions, while the Maryland statute leaves that classification to the courts to be determined by the nature of the service rendered by the carrier, yet both rested upon the police power of the state to control the use of its highways for the common welfare, safety, and convenience. And much of the reasoning in that case applies with peculiar force to this. In the statute there involved, as in that under consideration here, the purpose of the legislation was to protect the highways of the state and persons lawfully engaged in the use thereof, by regulating and limiting the use of such highways for the public transportation of freight and merchandise for gain. In holding such a purpose based upon necessity sufficient to support the exercise of the power, the court said:

"Provisions of the statute assailed on the ground that they are not highway regulations and violate the due process of law clause are: the requirement that the private contract carrier before engaging in business must obtain a permit upon considerations relating to the effect of their competition

upon existing common carriers; the provision authorizing the Railroad Commission to fix the minimum rates of such private carriers operating in competition with common carriers, which shall not be less than the rates prescribed for common carriers for substantially the same service; and the requirement, as appellants interpret the statute, that such private carriers must furnish cargo insurance policies and bonds.

"We are of opinion that neither by specific provision or provisions, nor by the statute considered as a whole, is there an attempt to convert private contract carriers by motor into common carriers. * * * It is true that the regulations imposed upon the two classes are in some instances similar, if not identical; but they are imposed upon each class considered by itself, and it does not follow that regulations appropriately imposed upon the business of a common carrier may not also be appropriate to the business of a contract carrier."

The ultimate and sufficient basis for the conclusions thus stated is found earlier in the opinion, where it is said: "It is well established law that the highways of the state are public property; that their primary and preferred use is for private purposes; and that their use for purposes of gain is special and extraordinary, which, generally at least, the legislature may prohibit or condition as it sees fit. *Packard v. Banton,* 264 U. S. 140, 144, 68 L. Ed. 596, 607, 44 S. Ct. 257, and cases cited: *Frost & F. Trucking Co. v. Railroad Commission,* 271 U. S. 583, 592, 593, 70 L. Ed. 1101, 1104, 1105, 46 S. Ct. 605; *Hodge Drive-It-Yourself Co. v. Cincinnati,* 284 U. S. 335, 337, 76 L. Ed. 323, 326, 52 S .Ct. 144; *Johnson Transfer & Freight Lines v. Perry* (D. C.), 47 Fed. (2nd) 900, 902; *Southern Motorways v. Perry* (D. C.), 39 Fed. (2nd) 145, 147; *People's Transit Co. v. Henshaw* (C. C. A.), 20 Fed. (2nd) 87, 89; *Weksler v. Collins,* 317 Ill. 132, 138, 139, 147 N. E. 797; *Maine Motor Coaches v. Public Utilities Commission,* 125 Me. 63, 65, 130 A. 866."

The reasons deemed sufficient to uphold the statute in that case apply with equal force to that under consideration in this. For the mere fact that the Texas statute separately

defined and classified common and contract carriers, while
the Maryland statute does not, is without importance, in view
of the further fact that the Maryland statute imposes no
burdens or restrictions upon contract carriers which may not
legitimately be imposed upon any class of carriers engaged in
the public transportation of merchandise and freight for hire.
In other words, the rights, privileges, and immunities of con-
tract carriers engaged in the public transportation of freight
for gain is taken as the measure of the rights, privileges, and
immunities of all classes of carriers engaged in the public
transportation of merchandise and freight over public high-
ways for gain, rather than those of common carriers. And,
since the Maryland statute imposes no burden or restriction
upon any carrier so engaged that may not validly be imposed
upon all carriers so engaged, there is no sufficient ground for
distinguishing the two cases; for both rest finally upon the
principle announced in *Stephenson v. Binford, supra,* that
the state may "prohibit or condition as it sees fit" the use of
its highways for gain. And it would indeed be strange if it
were otherwise. For, as pointed out in the case last cited, the
highways of the state are public property. They are estab-
lished and maintained at public expense for the use of the
whole people, primarily as avenues of communication for
their private uses, and their use for private gain is "special
and extraordinary." Having that consideration in mind, it
is not only within the power of the state, but its imperative
duty, to so regulate their use for private gain, that it may not
materially impair or destroy their usefulness as avenues of
communication adequate and available for the use of all citi-
zens for their own proper and private purposes. Certainly
the people who pay for the roads are not to be excluded from
the use thereof, in order that a few may profit by converting
them into motor ways for the transportation of freight and
passengers for gain.

Assuming, therefore, that the statute itself is valid, the
question is whether the appellant is engaged in the "public
transportation of merchandise or freight."

For reasons pointed out in *Rutledge Co-operative Assn. v. Baughman,* 153 Md. 297, 138 A. 29, which need not be repeated here, appellant's business is necessarily impressed with a public interest. It is a corporation with an identity distinct from its stockholders, operated for profit distributable in dividends to stockholders, who are not obliged to ship over its lines, and whose stock may be held as any other investment. At its will, its stock may be so distributed that it may serve as many persons as it could if it were a common carrier operating over the same route. The par value of its stock is ten dollars. By the mere device of issuing to each of them a share of stock, it could secure as patrons all persons needing such service as it offers over the route it serves. Its operation would damage the highways to the same extent as any other public carrier. If it sees fit, it can and will serve the whole public willing to buy a share of stock and in need of such service as it offers, as would any other public carrier, and its gains will be distributed to its stockholders as would those of any other public carrier. It is in active, real, and injurious competition with other public carriers, and the form of its organization is little more than a device to use the corporation laws of the state to permit it to operate in the guise of a private carrier when in all essential elements its business is that of a public carrier. Its incidents, its powers, and its operations are not to be distinguished from those of a public carrier, and in truth and in fact it is a public carrier.

But, while that is so, nevertheless it is not a common carrier, nor is it subject to any of the provisions of the statute law of the state affecting the operation of common carriers as such, since the statute itself expressly negatives any such conclusion. Code, art. 56, sec. 259, as amended by Acts 1927, ch. 152, sec. 1. For that reason the statute is not open to the criticism in *Smith v. Cahoon, supra,* that it imposes upon a private carrier the status of a common carrier, since it does not affect the nature of the corporation or its relations with its stockholders or the public, except to the extent that its operations involve a public use of the state's highways.

The second question is whether chapter 456, Acts of 1931, denies to the Public Service Commission the right to refuse a permit to the appellant to operate its truck line even though it finds such operation would be prejudicial to the public welfare and convenience.

That statute amended Code, art. 23, sec. 425, by adding to it the words, "and to transport the products of its members, even though in so doing it may compete with licensed common carriers." It is contended that those words evince a legislative intent of exempting co-operative associations from the application of Code, art. 56, sec. 258 *et seq.* The original act did not expressly grant to such associations the right to transport the products of their members over the public highways for gain, and whether it had any such right was not considered in *Rutledge Co-operative Assn. v. Baughman, supra,* but for the purposes of the opinion it was assumed that it was an incident of the right to market. Chapter 456 of the Acts of 1931 was obviously intended to remove that ambiguity and to remove the right of such companies to engage in the business of transporting the products of their members as a proper corporate function from the field of conjecture and construction. It dealt solely with the corporate structure, and has no apparent relation to article 56, section 258 *et seq.,* which relates to the use of the highways. By no ordinary process of reasoning can the conclusion be reached that, when the Legislature granted such an association the right to compete with "licensed common carriers," it intended to exempt it from those provisions of the Code which apply to all carriers using the highways of the state for the public transportation of freight and merchandise for gain. If the letter of the statute is examined, it is found to be a mere grant of power. And, if the purpose of the legislation, and the effect of the supposed exemption, are considered, it is manifest that it could be nothing else. For it is obvious that, under the language of the original statute, Code, art. 23, sec. 425, the appellant had not necessarily the right to engage in public transportation at all, a doubt which the amendment removed.

Apart from that, such an exemption would have constituted an arbitrary and unreasonable classification having no apparent relation to the purpose of the law. Such an association under the act (chapter 456, Acts 1931) has the power to operate canning factories, flour and grist mills, brokerage and commission offices, to deal in real estate, to hold the stock or bonds of similar corporations, to purchase, sell, or lease machinery, to handle, store, market, or utilize the agricultural products of its members, and to borrow and advance money to its members upon their products, and other broad, general, and comprehensive powers, limited only by the nature of the corporation as a co-operative association. In the course of its permissible activities, it may engage in transporting the products of its members in competition with common carriers. The primary purpose of Code, art. 56, sec. 258 *et seq.,* is the protection of the public highways, and it is difficult to discover any connection between that purpose and the supposed exemption, or any valid ground for the classification. If in the exercise of its granted powers such a corporation uses the state highways for the public transportation of freight and merchandise for gain, the wear and tear on the roads and the effect of such transportation on traffic will not be less because it is done for persons who may hold a share of its stock than if done for those who do not.

In *Smith v. Cahoon, supra,* in dealing with the effect of a Florida statute exempting transportation companies engaged in transporting agricultural, dairy, horticultural, and other farm products, fish, oysters, and shrimp, from a provision requiring transportation companies to give a bond or an insurance policy to protect the public generally, the court said: "In the present instance, the regulation as to the giving of a bond or insurance policy to protect the public generally, in order to be sustained, must be deemed to relate to the public safety. This is a matter of grave concern as the highways become increasingly crowded with motor vehicles, and we entertain no doubt of the power of the state to insist upon suitable protection for the public against injuries through the operations on its highways of carriers for hire, whether

they are common carriers or private carriers. But, in establishing such a regulation, there does not appear to be the slightest justification for making a distinction between those who carry for hire farm products, or milk or butter, or fish or oysters, and those who carry for hire bread or sugar, or tea or coffee, or groceries in general, or other useful commodities. So far as the statute was designed to safeguard the public with respect to the use of the highways, we think that the discrimination it makes between the private carriers which are relieved of the necessity of obtaining certificates and giving security, and a carrier such as the appellant, was wholly arbitrary and constituted a violation of the appellant's constitutional right. 'Such a classification is not based on anything having relation to the purpose for which it is made.'" And so in this case, where the purpose of the statute is to protect the state's highways and insure the public safety, there can be no valid reason for applying it to one class of public carriers and not to another, when both use it in the same way, damage it the same way, and create the same hazards. And, since a statute will not be construed so as to render it unconstitutional, when it is open to a construction, fair, reasonable, and wholly consistent with the Constitution, it will be assumed that the Legislature did not intend to exempt co-operative associations from the application of Code, art. 56, sec. 258 *et seq.*

It follows from what has been said that we entirely concur in the decree of the learned chancellor, and it will accordingly be affirmed.

*Decree affirmed, with costs.*