## MADONNA & SHAWSVILLE CO-OPERATIVE COMPANY *v.* PUBLIC SERVICE COMMISSION
[No. 79, October Term, 1934.]

*Decided January 16th, 1935.*

The cause was argued before BOND, C. J., URNER, OF-FUTT, PARKE, and SLOAN, JJ.

*John L. G. Lee* and *W. Conwell Smith,* for the appellant.

*Richard F. Cleveland,* for the appellees.

URNER, J., delivered the opinion of the Court.

The Madonna and Shawsville Co-operative Company of Harford County is a corporation engaged, under a permit from the Public Service Commission, in the transportation, by motor truck, of the products of its stockholders. In May, 1934, the company notified the commission to add the names of three stockholders to the list of those previously reported. The new members had joined the com-

pany, by the purchase of shares of its stock, for the purpose of availing themsleves of its transportation service for the shipment of milk produced on their farms. The result of this enlargement of its membership and extention of its service was to bring the appellant in competition with the Greer Transportation Company, a common carrier, which was already serving, under a permit from the Public Service Commission, the route on which the farms of the appellant's new stockholders were located. Upon protest by the Greer Transportation Company, and after a hearing, the appellant was ordered by the commission to discontinue that competition. By way of appeal from the commission's order, the appellant filed a bill in equity to have it vacated, in accordance with the procedure to that end prescribed by section 404 of article 23 of the Code. The appeal is from a decree sustaining the commission's demurrer, and dismissing the bill of complaint as amended.

In addition to the facts already indicated, the bill alleged that the three new members of the co-operative company joined it voluntarily and without its solicitation, and that they secured thereby better, quicker, and cheaper delivery of their milk to the Green Spring Dairy, their consignee, in Baltimore City. The bill described the order complained of as unreasonable and arbitrary, and contrary to the act of the General Assembly of Maryland passed in 1931, and known as chapter 456, which particularly provides that a co-operative association should have the power, among others, to "transport the products of its members, even though in so doing it may compete with licensed common carriers." The effect of that provision, enacted as an amendment to section 425 of article 23 of the Code, was considered in *Parlett Co-operative, Inc., v. Tidewater Lines, Inc.*, 164 Md. 405, 165 A. 313, where it was relied upon as a defense to an injunction suit by a common carrier to prevent competition by the defendant co-operative company, which was rendering transportation service for hire over a part of the same public highway route without a permit from the

Public Service Commission. After reaffirming the view expressed in *Rutledge Co-operative Assn. v. Baughman,* 153 Md. 297, 138 A. 29, that such a co-operative transportation company is a public carrier, and as such is subject to the permit requirements of sections 258-266 of article 56 of the Code (as amended by Laws 1927, ch. 152, secs. 1, 2), we said, in the opinion by Judge Offutt (pages 419, 420 of 164 Md., 165 A. 313, 318):

"The second question is whether chapter 456, Acts of 1931, denies to the Public Service Commission the right to refuse a permit to the appellant to operate its truck line even though it finds such operation would be prejudicial to the public welfare and convenience.

"That statute amended Code, art 23, sec. 425, by adding to it the words, 'and to transport the products of its members, even though in so doing it may compete with licensed common carriers.' It is contended that those words evince a legislative intent of exempting co-operative associations from the application of Code, art. 56, sec. 258 *et seq.* The original act did not expressly grant to such associations the right to transport the products of their members over the public highway for gain, and whether it had any such right was not considered in *Rutledge Co-operative Assn. v. Baughman, supra,* but for the purposes of the opinion it was assumed that it was an incident of the right to market. Chapter 456 of the Acts of 1931 was obviously intended to remove that ambiguity and to remove the right of such companies to engage in the business of transporting the products of their members as a proper corporate function from the field of conjecture and construction. It dealt solely with the corporate structure, and has no apparent relation to article 56, sec. 258 *et seq.,* which relates to the use of the highways. By no ordinary process of reasoning can the conclusion be reached that, when the Legislature granted such an association the right to compete with 'licensed common carriers,' it intended to exempt it from those provisions of the Code which apply to all carriers using the highways of the state for the public transportation of

freight and merchandise for gain. If the letter of the statute is examined, it is found to be a mere grant of power. And, if the purpose of the legislation, and the effect of the supposed exemption, are considered, it is manifest that it could be nothing else. For it is obvious that, under the language of the original statute, Code, art. 23, sec. 425, the appellant had not necessarily the right to engage in public transportation at all, a doubt which the amendment removed.

"Apart from that, such an exemption would have constituted an arbitrary and unreasonable classification having no apparent relation to the purpose of the law. Such an association under the act (chapter 456, Acts 1931) has the power to operate canning factories, flour and grist mills, brokerage and commission offices, to deal in real estate, to hold the stock or bonds of similar corporations, to purchase, sell, or lease machinery, to handle, store, market or utilize the agricultural products of its members, and to borrow and advance money to its members upon their products, and other broad, general, and comprehensive powers, limited only by the nature of the corporation as a co-operative association. In the course of its permissible activities, it may engage in transporting the products of its members in competition with common carriers. The primary purpose of Code, art. 56, sec. 258, *et seq.*, is the protection of the public highways, and it is difficult to discover any connection between that purpose and the supposed exemption, or any valid ground for the classification. If in the exercise of its granted powers such a corporation uses the state highways for the public transportation of freight and merchandise for gain, the wear and tear on the roads and the effect of such transportation on traffic will not be less because it is done for persons who may hold a share of its stock than if done for those who do not."

The extensive quotation which we have made from the opinion in the *Parlett Co-operative* case obviates any present discussion of the proposition that the appellant here could not, without obtaining a permit from the Pub-

lic Service Commission, have used the public highways of the state for the purpose of its transportation business. The question on this appeal is whether the company can extend its membership and service into competitive territory without procuring an extension of its existing permit. If it can enlarge the field of its operations to the extent indicated by the record, without further authorization by the commission, there would be no limitation upon the scope of such expansions. The recognition of the asserted right would be wholly inconsistent with the statutory purpose to subject such enterprises to regulation in the interest of the public welfare. If, when the appellant applied for a permit to begin operations, its members had included shippers in an area already served by a common carrier, there could have been no question as to the commission's right to refuse a permit on that ground. A subsequent increase or change of membership, involving the creation of a competition problem, must equally be within the commission's power of restriction and control, if its authority in that respect is not to be exposed to ready circumvention.

It does not appear from the bill of complaint that the appellant applied to the Public Service Commission for an extension of its original permit to the route on which its new members reside. This suit, therefore, is not concerned with the refusal to grant an application for an amplified permit, but complains of an order requiring the appellant to discontinue a particular transportation service for which a permit from the commission has not been requested. If the order to that effect be regarded as equivalent to one refusing a permit for the competitive transportation, we find in the bill no sufficient averment of facts to support the charge that the order was unreasonable. It was passed for the purpose of preventing a competition which the commission evidently regarded as unnecessary and prejudicial. to the public interests committed to its care and protection. The allegation that the service of the common carrier is inferior and more expensive than that of the co-operative company does not

state a cogent reason for reversing the commission's order in this case, when there is no averment that it has been asked and has refused to exercise its power to require the correction of the alleged inequality of service and rates.

In our judgment, the ruling on the demurrer to the amended bill of complaint was correct, and the decree dismissing the bill, there being no request for leave to amend it further, will be affirmed.

*Decree affirmed, with costs.*