A corporation known as the "City Dairy Company" was incorporated on the 31st day of March, 1914, under the laws of the State of Maryland, with its principal office located in the city of Baltimore. On the 13th day of June, 1921, the name of the corporation was changed by an amendment of its certificate to the "Western Maryland Dairy, Incorporated."
The company, pursuant to the authority conferred upon it by its charter, entered actively in the business of buying, pasteurizing, bottling, distributing and dealing in milk and its products. In the conduct of its business it purchased its milk supply in Maryland and nearby states. Some of it was transported by rail and delivered to the company at the railway terminals in the City of Baltimore. Some was transported by motor vehicles, operated by individuals and companies on regular scheduled routes, and delivered to the company at its plant in that city. While some was carried in the vehicles of the producers and delivered to the company at its plant. *Page 643 
These methods or means of transportation and delivery of the milk continued until the early part of the year 1925, when the "Western Maryland Dairy" determined, where it was practicable, to transport the milk by means of trucks owned and operated by it. To this end it bought out a number of individuals and companies, who were, at the time, transporting to it milk upon regular scheduled routes, and thereafter it carried the milk on those routes to its plant in its own trucks. The individuals and companies from whom the Western Maryland Dairy had bought said routes were, at the time of the sales thereof, operating their trucks thereon under the provisions of the "Public Freight Motor Vehicle Law," sections 258-262, article 56, of the Code of Public General Laws, which make it "the duty of each owner of a motor vehicle to be used in the public transportation of merchandise or freight, operating over state, state aid, improved county roads, and streets and roads of incorporated towns and cities in the State of Maryland, to secure a permit from the Public Service Commission of Maryland, to operate over said roads and streets," and to obtain the license therein charged, before operating said motor vehicles over said roads and highways. When the routes were so purchased and taken over by the Western Maryland Dairy, and it had begun to operate its trucks thereon as said individuals and companies on said routes had done, the Commissioner of Motor Vehicles, upon the advice of the Attorney General of this State, took the position that it too was subject to the provisions of said act and demand was made by him upon the company to comply with its provisions. This the company refused to do upon the ground, as it claimed, that it was merely transporting its own milk in its own trucks to its own dairy in Baltimore, and was not subject to the provisions of the act.
On November 5th, 1925, the Western Maryland Dairy, Incorporated, filed its bill in the Circuit Court of Baltimore City against the Public Service Commission of Maryland, the State Roads Commission of Maryland and the Commissioner of Motor Vehicles of the State of Maryland, asking *Page 644 
that an injunction be issued enjoining and restraining them, or any of them, from causing and procuring the arrest of the Western Maryland Dairy, Incorporated, or any officer or employee thereof, for failure on the part of the Western Maryland Dairy to obtain a permit from the Public Service Commission of Maryland for the operation of any of its freight motor vehicles engaged in the transportation of milk. An answer was filed thereto, evidence was taken, and a decree passed granting the injunction as prayed. It is from that decree that the appeal in this case is taken.
The record discloses that the milk consumed by the Western Maryland Dairy amounts to about ten millions gallons per annum,
and is one-half of all the milk used in the City of Baltimore. The farmers who produce the milk are members of an association known as the Maryland State Dairymen's Association and, with the exception of the milk consumed at their homes, the whole of their production is consigned to said association for sale, and is sold by it to dealers in milk, including the Western Maryland Dairy. In the sale of the milk, the association determines the price, as well as the terms upon which it is sold. When the milk is transported by rail, the price so determined upon is the amount to be received therefor at the road's terminal station in the City of Baltimore, and when it is transported by trucks, whether by the appellee or others, the price agreed upon is the amount to be paid therefor at the plant of the Western Maryland Dairy in that city. The cost of transportation is borne by the shippers or producers of the milk, which ranges from one and one-half cent to four cents per gallon, depending upon the length of the haul and the available transportation facilities from the point of shipment.
At least seventy-six per cent. of the milk received by the appellee is now carried to its factory in its own trucks, operated on regular routes, where the trucks call and get the milk of the producer from the same place at the same hour upon each of the scheduled days, but some of the milk consumed by the appellee is still transported by railroads and by individuals and companies operating their trucks over regular *Page 645 
scheduled routes. The amount bought is not ascertained and determined until it reaches the plant of the appellee, when it is there inspected and weighed. If upon inspection it is found that the milk does not conform to the regulations of the Baltimore City Health Department, or if it is not acceptable to the appellee, it is rejected and returned to the producer.
When the milk is carried by the appellee in its own trucks to its plant and the quantity of milk is there ascertained, it, in its settlement with the producer for the milk bought of him, deducts and retains, for transportation, from the price of the milk at the plant, an amount equal to and in some cases greater than that which had been charged for the same haul by the individual or company whose route it had purchased. The charge for transportation, or "differential" as termed by the company, is fixed and established by dividing the route into zones and increasing the charge with the increased distance of the zone from the company's plant. When any part of the milk so carried by the dairy company is known to have been lost or spilt in transportation, such part, as stated by the company, is accounted for to the producer. In so doing, however, the burden assumed by it is no greater than that imposed by law upon a common carrier where the loss occurs as a result of its negligence.
In the case of Goldsworthy v. Public Service Commission,141 Md. 674, the owner of a motor vehicle entered into a written agreement with another, by the terms of which the owner was to carry, for a varying consideration, such passengers as the other person designated. It was there held that the operation of the motor vehicle under the terms of said agreement, without first obtaining permission of the Public Service Commission, was an evasion of the statute. The late Chief Judge Boyd, speaking for the Court, said: "The use of motor vehicles in carrying passengers and property has become very general in this state, as well as elsewhere, and while such business should not be unnecessarily interfered with, the protection of the public demands careful supervising and proper control over them, in so far as *Page 646 
they are brought within the statutes. The owner certainly should not too readily be permitted to enter into contracts or adopt measures, which will enable them to readily evade the letter or the spirit of the statutes intended to govern them."
In the more recent case of Restivo v. Public ServiceCommission, 149 Md. 30, this Court was called upon to decide whether the appellant was lawfully operating his busses without first having obtained the permission of the Public Service Commission of Maryland. And there Judge Walsh, speaking for the Court, said: "It is difficult to determine with exactness just when the owner of a motor vehicle is operating as a common carrier, as that term is ordinarily understood in the law, but the courts have not been inclined to excuse the increasing numbers of those who earn their livelihood by transporting persons or goods for hire in motor vehicles from the responsibility of common carriers simply on technical grounds, and they have been particularly slow to excuse them when their plan of operation bore evidence of being a studied attempt to reap the rewards of a common carrier without incurring the corresponding liabilities."
The claim of the appellee that the milk transported by it in its own trucks to its plant is the property of the company at the time of its transportation is based upon the appellee's contention that the milk is purchased by it "f.o.b. place of origin." This contention is not supported by the evidence. The sale of the milk is made by the Maryland State Dairymen's Association to the Western Maryland Dairy. In such sale the price and terms are fixed and determined by the association and not by the producer. As we have said, the milk is consigned by the producer to the association for sale, and in the written agreement between them the producer "agrees to deliver said milk * * * in the city of Baltimore or other markets designated by the association" etc. and I. Wallace Heaps, president of the association, when asked as a witness "What is the place of delivery of the milk sold to the dairy company?" answered saying "f. *Page 647 
o.b. Baltimore; the prices are based f.o.b. Baltimore." This was true of all the milk sold to the dairy company by the association, that transported in the trucks of the company, as well as that carried by rail and by individuals and companies operating on regular scheduled routes. It is, in fact, conceded by the appellee, that with the exception of the milk transported in its own trucks, the place of delivery was in Baltimore City and not elsewhere, and it is only as to the milk it carries in its own trucks that the claim is made that the milk is delivered "f.o.b. place of origin," and this claim is made notwithstanding it says that the producer reserves the right to ship the milk by any carrier he may select, that he is not required to transport it upon the trucks of the appellee. Under these and other facts mentioned, the conclusion cannot be properly reached that the milk when carried by the appellee was by the agreement of sale delivered to it "f.o.b. place of origin." It is true that Hartman K. Harrison, vice-president of the Western Maryland Dairy, Incorporated, carefully avoided saying that the amount received by the company is a charge for transportation of the milk, but spoke of it as a "differential," a difference only in name.
If the ownership of the milk was in the producer while in transportation, which we think it was, we cannot conceive upon what principle it could be held that the appellee, in the operation of its trucks in the manner stated, is not subject to the supervision of the Public Service Commission of Maryland, and in holding that the ownership in milk was at such time in the producer, we are not to be understood as holding that upon all the facts of this case the company would be exempt from the provision of said act if it was found that the title to the milk was at that time in the company, as that question need not be decided in the disposition of this case.
The effort of the appellee to escape the supervision of the Commission upon the grounds stated by it, is, we think, to say the least, an attempt to evade the statute, and it should be so treated. *Page 648 
That the enforcement of the act here involved will not result in the taking of the appellee's property without due process of law within the meaning of the Fourteenth Amendment of the Constitution of the United States is too well established to require discussion. See Restivo v. West, supra, and the cases cited therein.
The decree in this case granting the injunction will be reversed, and the bill dismissed.
Decree reversed and bill dismissed, with costs to theappellant.