PUBLIC SERVICE COMMISSION *v.* GEORGE WEEMS WILLIAMS, RECEIVER.

RED STAR LINES, INC. *v.* GEORGE WEEMS WILLIAMS, RECEIVER.

[Nos. 63, 64, April Term, 1934.]

*Decided June 14th, 1934.*

318

The causes were argued before BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*Herman M. Moser,* for the Public Service Commission, appellants.

*Clarence W. Miles* and *Seymour O'Brien,* for the Red Star Lines, Inc., appellant.

*George Weems Williams* and *William L. Rawls,* with whom were *Marbury, Gosnell & Williams* on the brief, for the appellee.

PARKE, J., delivered the opinion of the Court.

George Weems Williams, as the receiver of the Washington, Baltimore & Annapolis Electric Railroad Company, a corporation organized under the laws of the State of Maryland, under appointment by the District Court of the United States for the District of Maryland, brought suit in the Circuit Court of Baltimore City on May 17, 1933, against Harold E. West, J. Frank Harper, and Steuart Purcell, commissioners of the Public Service Commission of Maryland, to obtain a preliminary injunction pending the proceedings, and finally a permanent injunction, against the said defendants as such commissioners, their agents, servants and employees, that would enjoin and restrain them from permitting or approving the operation by the Red Star Lines, Inc., of busses between Baltimore and Annapolis, as allowed by the order of the commission passed on April 28th, 1933; and, further, to obtain a decree adjudging such order to be con-

trary to law and void, and vacating and setting aside the order, and granting to the plaintiff any other and further relief as his case might require.

The allegations of the bill of complaint are that the corporation of which the plaintiff is receiver, and its predecessor, the Washington, Baltimore & Annapolis Electric Railway Company, have for the past twenty-five years been carrying on the business of a common carrier of passengers and freight between the cities of Baltimore and Washington, and the City of Annapolis and intermediate points, and that, for some years before the receivership and since, two single track lines of railroad, connecting the City of Annapolis with the cities of Washington and Baltimore, and intermediate points, and with other points inside and outside of the State of Maryland, have been operated as common carriers of freight and passengers.

A number of years ago a ferry was established between the City of Annapolis and a point known as Claiborne in Talbot County, Maryland, for the carriage of passengers, automobiles, and freight, and, since the establishment of the ferry service, the railroad company and its receiver have operated cars and trains which meet the ferries on arrival at the wharf of the ferry company at the foot of King George Street, in the City of Annapolis, and there receive and transfer passengers who desire to be transported between Annapolis, Washington, Baltimore, and other points, whereby a substantial traffic has been created, and the arrangement has been of great convenience to the traveling public desiring transportation between points on the Eastern Shore of Maryland and elsewhere in the State of Maryland, District of Columbia, and other states.

The bill of complaint further alleges that a corporation, called the Red Star Lines, Inc., has for some years past been operating busses on the public highways for the transportation of passengers to and from various points on the Eastern Shore of Maryland and Claiborne, at which point passengers would be either delivered at the

dock of the ferry or there received from the ferries that operated between Claiborne and Annapolis, and at Annapolis passengers would be received or delivered by the ferries from or to the cars of the Washington, Baltimore & Annapolis Electric Railroad Company; and that through tickets were sold by the three public carriers, the railroad company, the ferry company, and the Red Star Lines, Inc., to the great advantage of the traveling public. The Red Star Lines, Inc., however, desired to obtain a franchise to operate busses between the cities of Annapolis and Baltimore, which, the bill of complaint avers, would be in direct competition with the railroad company, but the bus company had been unable to obtain this franchise, and so, in the early part of 1933, renewed its application to the Public Service Commission of Maryland for a franchise or permit to operate certain passenger busses over the Clairborne-Annapolis Ferry and between Annapolis and Baltimore, for the purpose of furnishing continuous and through service between Baltimore and points on the lines of the Red Star Lines, Inc., on the Eastern Shore of Maryland, but not of including transportation of local passengers between Baltimore and Annapolis or intermediate points. A hearing was had on this application, and the plaintiff and its receiver were there represented, and, after testimony and argument, the Public Service Commission passed on the 28th of April, 1933, its order directing that the permit applied for be issued, "provided that the service shall be rendered in all respects as described at the hearing herein and that this order and the permits issued thereunder shall be effective only so long as the busses are transported over the ferry as proposed, and no change of vehicle is made at Annapolis, and provided further, that the said Red Star Lines, Inc., shall not, under the said permits, transport passengers locally in either direction between Baltimore and intermediate points."

The further allegation is made that the exercise of the privilege granted by the order is not necessary or convenient for the public service, and that it is not required

by or consistent with the public interests, for the reason that the service now being furnished to the public by the railroad company, the ferry company, and the bus company is adequate and reasonably satisfactory to the traveling public and the people of the State of Maryland, and that, if it is deficient, either in the rates charged, frequency of service, or time required for this service, the Public Service Commission has full power and authority to make the service satisfactory, reasonable, and convenient in every respect, and that the plaintiff, at the hearing before the commission, offered on behalf of the railroad company that it would conform to any order the commission might pass which would improve the service, and would be willing to reduce rates, adjust schedules, and in every way co-operate with the commission and other carriers in the improvement of the service.

The bill of complaint then alleged that the maintenance and operation of the lines of railroad owned by the railroad company as a transportation system is of vital interest, not only to the many communities served, but to the public at large, both in and out of the State of Maryland, and that therefore the granting of any francise or permission to any other carrier to operate other forms of transportation in competition with the railroad company, which would reduce the revenues of the railroad company, and thereby have the effect of causing the suspension of the operation of the lines of the railroad company, is inconsistent with the public interest, unnecessary, not convenient for the public service, and unlawful, and, in support of these averments, the bill of complaint sets up these alleged facts:

(a) The precarious financial condition of the railroad company, with its revenues declining to an extent that it was barely making operating charges, if proper depreciation on its rolling equipment were disregarded, and giving effect to the Act of 1931, passed by the General Assembly of Maryland, exempting the railroad property of the company from taxation for 1931 and 1932. Acts 1931, ch. 497.

(b) The railroad company carried in the year 1932 approximately 2,500,000 passengers.

(c) Since the hearing before the commission, the General Assembly of Maryland passed an act which provided that no taxes should be assessed or levied against the railroad company for the years 1933 and 1934 or such part of said years as the railroad should be operated, except out of net income arrived at after allowing for proper depreciation on the rolling equipment and interest on its car trust equipments.

(d) Since the appointment of the receiver, no interest payments, except on car trust equipment, and no dividends of any kind, have been paid to the bondholders or stockholders of the company.

(e) The francise granted by the municipality of Annapolis, that enabled the railroad company and its receiver to maintain and operate certain tracks in specified streets of the municipality, expired on or about July 1st, 1932. Without the use of the tracks leading from the West Street Station of the railroad company in Annapolis to the ferry wharf, railroad service in connection with the ferry would have been inconvenient to the public; and, being unable to obtain a renewal or extension of the franchise, the receiver instituted condemnation proceedings to obtain, and did thereby obtain, the right to maintain said tracks in the City of Annapolis and to operate cars thereon for the period of two years from July 1st, 1932, for the purpose of connecting as theretofore with the ferry service.

(f) In the year 1932 the total railway operating revenues were $1,018,661.56 as against $1,261,650.13 for the period from January 27th, 1931, to December 31st, 1931, or a decrease of $242,988.57; and the net income for the year 1932 was $6,344.09, without allowing any costs of receivership or for depreciation of $68,926.63 for the year on the rolling equipment, as is required by the regulations of the Interstate Commerce Commission, but including taxes due to the State of Maryland and the various counties and municipalities thereof for that year, which would about offset the amount of depreciation, and

without allowing any interest on bonds other than car trust equipments, which it is necessary to pay in order to retain possession of the cars. The result of these figures demonstrates that the railroad receipts were insufficient to pay its operating charges.

(g) For the first three months of 1933, the net income from railway operations showed a loss of $40,457.42, including depreciation on the rolling stock and including taxes, and, after deducting from the amount of taxes assignable to railroad operations the amount of taxes payable to the State of Maryland and the various counties and municipalities thereof, the operation for said three months of 1933 would show a deficit in operating revenue of between $20,000 and $25,000.

(h) During the year 1932, the railroad handled passengers received from or delivered to the ferry at Annapolis approximately 34,874 persons bound from or to Baltimore and from or to the ferry, and 6,295 persons from or to Washington and from or to the ferry, and the estimated gross revenue for the year was $30,876.75, and the plaintiff charges that, if the bus line is permitted to operate busses between Annapolis and Baltimore under the commission's order, there will be a further substantial increase in the deficit.

(i) The probability that the bondholders, who are in effect the substantial owners of the railroad company, will not permit the operation of the railroad at a substantial loss of the principal, but will cause the railroad property to be sold and its operation as a railroad to end.

(j) It is impossible for the railroad company to discontinue the operation of its cars to the ferry without depriving passengers bound to or from Washington of convenient service, although the operation of such cars will be at a loss, if any substantial portion of the travel between Baltimore and the ferry is diverted from the cars of the railroad company to the busses of the Red Star Lines, Inc.

Several days after the institution of this suit, the Red Star Lines, Inc., which is a common carrier of passen-

gers for hire between various cities and towns on the Eastern Shore of Maryland, and between various points on the Eastern Shore of Maryland and Wilmington, in the State of Delaware, petitioned for leave to intervene and be made a party defendant. Leave having been granted, the Red Star Lines, Inc., first demurred, but the demurrer does not appear to have been ruled upon, and the intervener must be held to have abandoned the demurrer, as it later filed an answer.

The answer of the bus company denied (1) that the railroad company had been a great convenience to the public desiring transportation between points on the Eastern Shore of Maryland and elsewhere in the state; (2) that the bus company had desired or sought a franchise, permit, or certificate of public welfare and convenience authorizing the bus company to operate busses between the cities of Annapolis and Baltimore that would be in direct competition with the lines of the railroad company, but, on the contrary, the respondent averred that the permit or authority sought and granted by the Public Service Commission on April 28th, 1933, merely vested in the respondent authority to extend its existing transportation service from Claiborne to Baltimore, and that the permit authorized the bus company to convey its passengers in busses on the ferries operated between Claiborne and Annapolis, and thence over the state highway between Annapolis and Baltimore or *vice versa*, except such traffic as originates at points now and for some time past served by the defendant on the Eastern Shore, destined for Baltimore, and *vice versa*, and that service constitutes a great public convenience, and does not constitute a service that is in direct competition with the railroad company. The answer further admitted that the precarious financial condition of the railroad company, the lessening of the revenues, and the other matters set forth in the bill of complaint, with respect to the number of passengers carried, to the net earning capacity of the railroad company and its inability to do more than make the operating charges, and to the fail-

ure to pay interest or dividend, as recited in the bill of complaint, were all laid before the commission in support of the railroad company's objection to the permit sought. In further response to the bill of complaint, the answer admits the remission of taxes for the years 1933 and 1934, as alleged in the bill, but states that, while remission of taxes was subsequent to the hearing before the commission, it was prior to the commission's order of April 28th, 1933. The answer then makes a categorical denial that the existing service of the railroad company is adequate and reasonably satisfactory to the traveling public and people in the State of Maryland, but avers that it was conclusively established at the hearing before the commission that such service is inefficient and unsatisfactory, and that the public welfare and convenience justified and required the permit granted to the defendant. Furthermore, the answer makes a specific denial that the existing service now being furnished to the traveling public by the railroad company, the ferry company, and the bus company is adequate and reasonably satisfactory to the traveling public and people of the State, and charges that the public welfare and convenience justify and require a direct and continued form of transportation whereby persons traveling between Baltimore and various cities, towns, and communities on the Eastern Shore of Maryland, and *vice versa,* may make such trips without the great inconvenience and discomfort caused by being required to use the service of three separate and independent carriers. Finally, the answer concludes with the declaration that the Public Service Commission had, after investigating the expediency of granting the permit applied for by the bus company, determined that the public welfare and convenience required that the permit should be granted, and that this conclusion was justified by the weight of the testimony heard and presented at the hearing.

The answer presented issues of fact, but of facts which had been previously adjudicated by the Public Service Commission after a full consideration of all the testi-

mony. The same issues of fact are the questions which were before the chancellor for determination. The wearisome recital of the contents of the bill and answer were with the object of showing that the issues before the chancellor were not different from those which were made before the commission, and that these issues are fundamentally of fact and not of law.

The bill of complaint in this cause had been demurred to by the commission, and its demurrer overruled. On appeal, this decision was affirmed in *Public Service Commission v. Williams, Receiver,* 166 Md. 277, 170 A. 517. In overruling the demurrer, the cause was remanded in order to afford the Public Service Commission an opportunity to answer, and this the commission did on March 6th, 1934, and thereby denied the material allegations of the bill of complaint, and particularly the averment that the service furnished by the busses of the Red Star Lines, Inc., the ferries of the Claiborne-Annapolis Ferry Company, and the cars of the Washington, Baltimore & Annapolis Electric Railroad Company, in combination, involving, as such service does, the transfer of passengers and of their baggage both at Claiborne and at Annapolis, is convenient and of great value to the public traveling in either direction between Baltimore and points on the Eastern Shore; and the commission further asseverated "that the issuing by them to Red Star Lines, Inc., of permits for the operation of certain of that company's buses between points on the Eastern Shore and Baltimore *via* the Claiborne-Annapolis ferry was, in their judgment, deemed best for the public welfare and convenience and therefore lawful and proper." The cause then came on for hearing, and, evidence having been introduced by the plaintiff different from or being additional to that which had been offered upon the hearing before the Public Service Commission, the chancellor directed the testimony to be transmitted to the commission, pursuant to the provisions of section 405 of article 23 of the Code. The testimony so transmitted was considered by the commission, which on March 13th, 1934,

reaffirmed the order of April 28th, 1933, the commission finding that the service furnished by the busses of Red Star Lines, Inc., the ferries of the Claiborne-Annapolis, Ferry Company, and the cars of Washington, Baltimore & Annapolis Electric Railroad Company, in combination, is not satisfactory, convenient, or adequate for the public traveling between Baltimore and points on the Eastern Shore, and the commission further finding that the through service provided by the busses of Red Star Lines, Inc., to persons traveling between points on the Eastern Shore and Baltimore, is required by the public welfare and convenience, and that the maintenance of the service of the said Washington, Baltimore & Annapolis Electric Railroad Company is not in any way contingent or dependent upon the deprivation of the right of the public desiring to travel between such points on the Eastern Shore and Baltimore to use the said service provided by the busses of Red Star Lines, Inc., as the total number of passengers carried by the through busses of Red Star Lines, Inc., between points on the Eastern Shore and Baltimore is so small relatively as to be negligible, when compared to the total number of passengers transported by Washington, Baltimore & Annapolis Electric Railroad Company, and not sufficient seriously to affect that company's revenues or to jeopardize its continued operation, even if it should be assumed that a substantial part of the traffic carried by the through busses of the said Red Star Lines, Inc., is diverted from the cars of the said Washington, Baltimore & Annapolis Electric Railroad Company, operating between Baltimore and Annapolis.

The parties having agreed that the pleading filed in chancery in reference to the order dated April 28th, 1933, should apply to the order dated March 13th, 1934, and that the cause be forthwith determined, the chancellor passed his decree, adjudging that the order of the commission of April 28th, 1933, and likewise the reaffirmation of that order on March 13th, 1934, are unlawful and unreasonable, and that, the exercise of the franchises and privileges granted to the defendant Red Star Lines, Inc.,

not being necessary for the convenience of public service, the two orders be vacated and set aside, and the parties enjoined as prayed in the bill of complaint. It is from this decree that the commission and the bus company have severally appealed.

The first order of the commission recites that its passage was because it had "been shown that the proposed service would ·provide substantial and desirable conveniences and advantages compared with the service now available to persons traveling between the Eastern Shore points and Baltimore, namely, the saving of time, avoidance of baggage handling, protection from inclement weather and elimination of the change between bus and ferry at Claiborne and between ferry and train at Annapolis"; and the second order, which was passed after consideration of the additional testimony before the chancellor, states that the affirmance of the prior order was, among other reasons, because the commission had found from the testimony "that the through service provided by the buses of the Red Star Lines, Inc., to persons traveling between points on the Eastern Shore and Baltimore, is required by the public welfare and convenience, and that the maintenance of the service of the said Washington, Baltimore and Annapolis Electric Railroad Company is not in any way contingent or dependent upon the deprivation of the right of the public desiring to travel between such points on the Eastern Shore and Baltimore to use the said service provided by the buses of Red Star Lines, Inc., as the total number of passengers carried by the through buses of Red Star Lines, Inc., between points on the Eastern Shore and Baltimore is so small relatively as to be negligible when compared to the total number of passengers transported by Washington, Baltimore and Annapolis Electric Railroad Company and not sufficient seriously to affect the company's revenues or to jeopardize its continued operation, even if it should be assumed that a substantial part of the traffic carried by the through buses of the Red Star Lines, Inc., is diverted from the cars of the said Washington, Baltimore and

Annapolis Electric Railroad Company operating between Baltimore and Annapolis." So the questions here involved are primarily and fundamentally questions of fact.

The rapidly increasing use of motor vehicles for transportation of freight and passengers for hire as common carriers, and the determination of their relation among themselves and with other common carriers, employing other methods of carriage, is an administrative and governmental matter of difficult solution and of gravest economic and social consequences. In this state the problem has been committed to the Public Service Commission for regulation and control. Since the questions involved are legislative and administrative rather than judicial, the courts do not have jurisdiction except to determine the legality or unreasonableness of the action of the commission. The existing steam or electric lines do not have a franchise which is exclusive of the later form of transportation by motor vehicles, but the perplexing policy of regulation is for the State or its duly constituted agency, and not for the courts. The State, however, has, in part, declared her policy with reference to the public transportation of passengers over any specified route by motor vehicles in section 255 of article 56 of the Code (1929 Supplement), in these terms:

"It shall be the duty of the Public Service Commission of Maryland, upon the application of any motor vehicle owner for a permit to operate any motor vehicle for the public transportation of passengers over any specified route, to investigate the expediency of granting said permit; the number of motor vehicles to be used, and the rate to be charged, and if, in the judgment of the Public Service Commission, it is deemed best for public welfare and convenience that said permit should be granted, said Public Service Commission is hereby empowered and authorized to grant such permit subject to such reasonable conditions and terms, and for such duration of time, not exceeding the period of twenty years, as it may deem advisable. * * * But if said Public Service Commission deems the granting of such permit prejudicial to the wel-

fare and convenience of the public, then the said Public Service Commission is hereby empowered and authorized to refuse the granting of the same." See sections 251-257A; and also sections 258-266 as to public freight motor vehicles. *Red Star Line v. Baughman*, 153 Md. 607, 612, 139 A. 291.

In addition, the policy of the State is further proclaimed by the provision that common carriers of freight and passengers by motor vehicles within the state are subject to the jurisdiction of the Public Service Commission (article 23, title, Corporations, sub-title "Public Service Commission," secs. 347, 350, 360, 416, 361), and that "no common carrier * * * shall * * *' exercise any franchise or right under any provision of the railroad law, or of any other law not heretofore lawfully exercised, without first having obtained the permission and approval of the commission. The commission shall have power to grant the permission and approval herein specified whenever it shall, after due hearing, determine that such construction or such exercise of the franchise or privilege is necessary or convenient for the public service"; and the commission may require that it be shown by clear and satisfactory evidence that the granting of such permission, approval, authority, or consent is required by or consistent with the public interest, in addition to the compliance with other requirements of sections 379, 380, 390, 391, or 394 of the subtitle; and, when such proof is required hereunder, the burden of proof shall be upon the applicant. Sections 379, 380A, of article 23 of the Code (1929 Supplement). But, after the commission has passed an order, and action is taken by any dissatisfied person in interest to have the order vacated or set aside "on the ground that any rate or rates, tolls, charges, schedules, joint rate or rates, fixed in such order is unlawful, or that any such regulation, practice, act or service fixed in such order is unreasonable," the burden of proof is cast "upon the party adverse to such commission, or seeking to set aside any determination, requirement, direction or order of said commission, to

show by clear and satisfactory evidence that the determination, requirement, direction or order of the commission complained of is unreasonable or unlawful, as the case may be." Code, sec. 408; *Public Service Commn. v. Northern Central R. Co.*, 122 Md. 388, 90 A. 105; *Public Service Commn. v. Byron*, 153 Md. 478, 138 A. 404; *Pond on Public Utilities* (4th Ed.) vol 3, sec. 747.

So, in the case at bar, the burden was on the plaintiff to show, by clear and satisfactory evidence, that the orders complained of are unreasonable. Whether the orders were unreasonable depends, in turn, upon whether the franchise or rights they conferred were "necessary or convenient for the public service." *Supra.* See *Benson v. Public Service Commn.*, 141 Md. 398, 403, 404, 118 A. 852.

In the solution of this problem, the court may not substitute its own judgment for that of the commission. As said in *Public Service Commn. v. United Rwys. & Electric Co.*, 155 Md. 572, at page 580, 142 A. 870, 873: The commission's "conclusion, of course, is subject to review, but, when supported by evidence, is accepted as final; not that its decision, involving, as it does, so many and such vast public interests, can be supported by a mere scientilla of proof, but the courts will not examine the facts further than to determine whether there was substantial evidence to sustain the order." *Baldwin v. Public Service Commn.*, 160 Md. 202, 207, 152 A. 907; *Public Service Commn. v. Byron*, 153 Md. 464, 138 A. 404.

The record is clear that there was substantial and competent evidence of facts and circumstances from which the commission could, in the exercise of a sound judgment, rationally have reached the conclusions set forth in its orders that the proposed service would provide substantial and desirable conveniences and advantages compared with the subsisting service available to persons traveling between the points on the Eastern Shore served by the Red Star Lines, Inc.; that the service furnished by the busses of the applicant, the ferries of the Claiborne-Annapolis Ferry Company, and the cars of

the Washington, Baltimore & Annapolis Electric Railroad Company, in combination, is not satisfactory, convenient, or adequate to the traveling public; and that the maintenance of the service of the railway carrier is not contingent or dependent upon the deprivation of the right of the public desiring to travel between points on the Eastern Shore and Baltimore to use the contemplated service of the motor vehicle line; and that the through service to be provided by the conveyances of the motor vehicle carrier to persons traveling between the affected points on the Eastern Shore of Maryland and Baltimore is required by the public welfare and convenience.

In short, the railway carrier and the motor vehicle carrier offered testimony in support of their several positions, as set forth by their pleadings, and, without attempting to state and analyze the evidence, the court is not convinced that the commission came to a determination in their estimate of the evidence and of the circumstances such as would make, under the principles of law applicable, their orders unreasonable.

The contention was urged that the public convenience could be adequately met by the commission securing and enforcing a combination of the railway, the ferry, and the bus carriers, whereby their co-operation would relieve, it was argued, the inconvenience theretofore encountered through the prevailing method and manner of travel. It is not for this tribunal to determine that phase of the question. It is enough to say that there was a sound basis for a difference of opinion, and that the adverse finding of the commission was not arbitrarily made, since there were material facts and circumstances on the record that afforded rational ground for the findings against the plaintiff.

Among the material facts considered were that the electric railway carrier has been in the hands of a receiver since January 27th, 1931, and that its financial condition presents grave difficulties for its continued operation. Whether or not the anticipated loss from the

prospective competition of the motor vehicle carrier would substantially affect the earning capacity of the electric line to the prejudice of the public, by causing the discontinuance of the service of the railway carrier, was a factor reasonably to be weighed, and was weighed by the commission, in connection with all the other testimony. This again was a matter about which reasonable men might differ. The protection of a carrier against competition, in order to conserve existing investments, or to render less liable the discontinuance of the operation of its existing railway system, must be regarded as secondary to the first and fundamental obligation of the commission, to secure adequate and permanent service for the public generally at the least cost.

It is true that, as a general rule, a public service commission may not act reasonably if it should authorize a public carrier of passengers to enter, with a similar service, a given field which possesses an established system of transportation that is rendering adequate, continuous, and satisfactory service to the public at reasonable cost. If, however, the second carrier will not render the same service in the given field as the first, the two carriers are not competitors within the meaning or principle of the rule. To put the point more specifically, the extension of the right of way of the second carrier through the given field of the first carrier, without the right of the second carrier to transport any passenger traveling either between the terminal points, or elsewhere along said lines of the first carrier, does not make the two carriers competitors within the scope of the rule, because the extension of the line of travel of the second carrier from its field of operation through the given field of operation of the first carrier is to enable the public in the field of operation of the second carrier to be delivered at a terminus, which is also the terminal city of the first carrier, and, at this terminus of the second carrier, to enable the public that may desire to be transported into the given territory of the second carrier to take passage in the motor vehicles of the second carrier at

the terminal point and be carried through the given field of the first carrier to the destination in the given field of the second carrier.

A recapitulation of the facts will make clear that the two carriers here concerned are not such competitors as the rule invoked by the plaintiff contemplates. The region served by the railway carrier was along its lines to its terminals in Baltimore, Annapolis, and Washington. Its public carriage of freight and passengers did not include any part of the Eastern Shore of Maryland. On the other hand, the motor vehicle carrier operated along its routes over the public highways of the Eastern Shore of Maryland and the adjacent State of Delaware. Its projected extension of service was to use the ferry service between Claiborne, one of its terminals on the Eastern Shore, and Annapolis, for the transportation of its busses between these points of embarkation and debarkation, and the highway between Annapolis and Baltimore, for the purpose of establishing a through or continuous line of motor vehicle transportation for public travel of passengers to and from the Eastern Shore and the metropolis of Baltimore, to the exclusion of any passenger travel, either way, between Annapolis and Baltimore. So the territory served by the two carriers was not identical, and any competition between the two would be limited, since it would be with respect to passenger travel from Baltimore, through Annapolis, to the Eastern Shore, or from the Eastern Shore, through Annapolis, to Baltimore, and not with respect to passenger travel between Annapolis and Baltimore.

For the reasons assigned, the decree of the chancellor will be reversed and the cause remanded for a decree dismissing the bill of complaint, and affirming the orders of the Public Service Commission of Maryland.

> *Decrees reversed in Nos. 63 and 64, with costs to the appellants, and cause remanded in each appeal for a decree in conformity with this opinion.*