PUBLIC SERVICE COMMISSION *v.* TIDEWATER
EXPRESS LINES, INC.

[No. 69, January Term, 1935.]

*Decided May 22nd, 1935.*

582

The cause was argued before BOND, C. J., URNER, PARKE, SLOAN, MITCHELL, and JOHNSON, JJ.

*Richard F. Cleveland,* for the appellants.

*Francis Key Murray* and *G. C. A. Anderson,* with whom were *Thomas J. Tingley* and *Victor I. Cook* on the brief, for the appellee.

*Ginsberg & Ginsberg,* submitting a brief as *amici curiae.*

SLOAN, J., delivered the opinion of the Court.

Pursuant to the provisions of section 404 of article 23 of the Code, the Tidewater Express Lines, Inc., appellee, filed its bill of complaint against Harold E. West, J. Frank Harper, and Steuart Purcell, constituting the Public Service Commission of Maryland, appellants, to vacate and set aside an order of the commission, dismissing the appellee's complaint to the commission against the Farmers' and Dairymen's Cooperative Association, Inc., and, from a decree sustaining the bill of complaint, the defendants appeal.

It is alleged in the bill of complaint, and the evidence shows, that on or about November 2nd, 1934, the plaintiff (appellee) filed a complaint with the Public Service Commission of Maryland against the Farmers' and Dairymen's Cooperative Association, Inc., for hauling and transporting milk as a public carrier for hire, without a permit from the Public Service Commission, over a route extending from New Midway in Frederick County, to Baltimore City, by way of Westminster, which is a route covered by two permits from the Public Service Commission to the appellee. The members of the Public Service Commission filed their answer admitting the facts alleged, but they alleged that the truck operations of the Farmers' and Dairymen's Cooperative Associa-

tion, Inc., "were not such as would justify the commission in notifying" it to cease such operations, and that the commission's order of dismissal of the appellee's complaint "was lawful and proper and was based on substantial evidence." The Farmers' and Dairymen's Cooperative Association was, on petition, allowed to intervene as a defendant, and filed the same answer as the commission.

The effect of the decree sustaining the appellee's bill of complaint and vacating the order of the commission was to hold that the Farmers' and Dairymen's Association's operations were for hire, on regular schedules, and required a permit from the Public Service Commission. Code Pub. Gen. Laws (Supp. 1929) art. 56, secs. 258, 259, as amended by Acts 1933, c. 282, sec. 1; *Public Service Commn. v. Western Maryland Dairy*, 150 Md. 641, 135 A. 136; *Rutledge Co-Operative Assn. v. Baughman*, 153 Md. 607, 138 A. 29; *Parlett Co-operative, Inc. v. Tidewater Lines, Inc.*, 164 Md. 405, 165 A. 313; *Madonna & Shawsville Co-operative Co. v. Public Service Commn.*, 168 Md. 95, 176 A. 611.

It is the contention of the appellee that the decision of the chancellor was governed and controlled by the case of *Public Service Commn. v. Western Maryland Dairy*, 150 Md. 641, 135 A. 136, and of the appellants that the *Western Maryland Dairy* case is distinguishable on its facts from that case, and is not applicable. Our view of the two cases is that the facts are so nearly identical that yielding to the argument of the commission could have no other result than to overrule the *Western Maryland Dairy* case. If we adhere to the decision in that case, there is no alternative but to sustain the decree appealed from in this case.

The Farmers' and Dairymen's Cooperative Association is a Maryland corporation, with an authorized capital of $100,000 shares of stock at $25 each. It has issued 634 shares, all except a comparatively small number of which are held by Raymond H. Eisenhart, the president, who is neither farmer nor dairyman. A list of stockholders

was offered in evidence, but was not included in the record, and we have nothing but some general statements as to the stockholdings. The certificate of incorporation limits dividends to eight per cent. per annum. Each stockholder has one vote regardless of the number of shares of stock he may own.

The plan of operations of the Farmers' and Dairymen's Association is set out with considerable detail in a form of agreement which was offered in evidence, but only for the purpose of showing the method adopted and followed in the business between the corporation and its stockholders and customers; no agreement having been signed by any of the members or customers. The plan contemplated the purchase of milk from members only, but there was evidence of dealing with farmers who were not members, though Mr. Eisenhart testified that it was the intention to deal only with members.

By the plan as set forth in the form of agreement, under which, though unexecuted, the parties were operating, the member agreed to deliver "at such place or places as may be named from time to time" all milk, produced by him, subject to the health regulations of the State of Maryland and of the City of Baltimore, which meant, as testified, acceptance only on approval of the Health Department of Baltimore, where it was inspected and, if not accepted, returned to the member. On the 10th day of each month the board of directors determines the price to be paid the farmers for milk furnished the preceding calendar month, determined after deducting "such gallonage charges or deductions as may be authorized by the laws of Maryland, or by the By-Laws, to cover the cost of operating and maintaining said Association creating a Reserve Fund and a Capital Expenditure Fund of such size or amount as may be approved by the members. All deductions shall be on a gallonage or hundred pound weight basis, and shall be uniform as to all members." Settlement is required to be made on the 15th day of each month for milk furnished and accepted during the preceding calendar month.

In substance there is no difference between the case of *Public Service Commn. v. Western Maryland Dairy*, 150 Md. 641, 135 A. 136, 137, and this case. The details may differ to some extent, but the system is the same. The Western Maryland Dairy is a seller and distributor of milk in the City of Baltimore and vicinity. It was made up of a combination of many dairies or creameries, and gathered milk over quite an extensive territory. As in the present case, the milk was not finally accepted until it was tested and approved, and this was done at the end of the haul. The farmers furnishing the milk were members of an association called the Maryland State Dairymen's Association, the whole of the member's production being consigned to the association for sale, and by it sold to dealers in milk, including the Western Maryland Dairy. When transported by trucks, whether by the Western Maryland Dairy or others, the price agreed on was the amount to be paid at the Western Maryland Dairy, less the cost of transportation, ranging "from 1½ cents to 4 cents per gallon, depending upon the length of the haul and the available transportation facilities from the point of shipment." The purchases of milk by the Western Maryland Dairy amounted to 10,000,000 gallons a year, and seventy-six per cent. of it was carried to its plant in its own trucks, operated on regular routes, taken up from the producer at the same places, at the same hours, on each of the scheduled days. When the milk reached the dairy's plant it was weighed and inspected, and, if it passed, inspection was paid for at the price fixed by the association, less the cost of transportation, "an amount equal to and in some cases greater than that which had been charged for the same haul by the individual or company whose route it had purchased." In the organization of the Western Maryland Dairy several licensed carriers had been taken over by it, and the equipment and routes used by the dairy in its business.

The ground upon which this court based its decision in the *Western Maryland Dairy* case was that the ownership of the milk was in the producer while in transit, and

that the title did not pass until final acceptance or approval of the milk at the buyer's plant. *Agri Mfg. Co. v. Atlantic Fertilizer Co.,* 129 Md. 42, 47, 98 A. 365.

The appellants, the Public Service Commissioners, contend the chief difference between this case and the *Western Maryland Dairy* case is that in the latter "a specific charge for transportation was deducted, based on the distance the milk was hauled according to zones established for that purpose," or, as expressed by this court (150 Md. 641, page 645, 135 A. 136, 137) : "The charge for transportation, or 'differential' as termed by the company, is fixed and established by dividing the route into zones and increasing the charge with the increased distance of the zone from the company's plant." The plan adopted in the case before us provides: "All deductions shall be on a gallonage or hundred pounds weight basis, and shall be uniform as to all members." If there is any uniformity in the charge for transportation, there is more of it in the *Western Maryland Dairy* case, as the system of zoning adopted there distributed the cost of hauling in proportion to the distances covered; it was more necessary there because of the wider territory covered by its collecting operations. The difference, as we see it, is in size and not in kind, and the decree appealed from will be affirmed.

The appellants make the point that there is substantial evidence to support the action of the commission in dismissing the appellee's complaint against the Farmers' and Dairymen's Association, and that, this being true, it is not within the province of the courts to disturb its finding, and cites *Public Service Commn. v. Williams,* 167 Md. 331, 173 A. 259, 265, that, "In the solution of this problem, the court may not substitute its own judgment for that of the commission," which cites *Public Service Commn. v. United Railways & Electric Co.,* 155 Md. 572, 580, 142 A. 870, 873, that "The commission's conclusion, of course, is subject to review, but, when supported by evidence, is accepted as final * * * but the courts will not examine the facts further than to deter-

mine whether there was substantial evidence to sustain the order." In that case (167 Md. 316 173 A. 259) the question was whether the public convenience required or justified the order extending the service of the Red Star Bus Line from the Eastern Shore of Maryland to Baltimore, in competition with the Washington, Baltimore & Annapolis Railway Co. from Annapolis to Baltimore, and in the exercise of its judgment, based on evidence, the commission granted the permit applied for, and this court declined to substitute its judgment for that of the commission. *Illinois Commerce Commn. v. Chicago & E. I. Railway Co.*, 332 Ill. 243, 163 N. E. 664, 667. Neither the *Red Star* case *(Public Service Commn. v. Williams)* nor the case now before us, parallel each other in their facts or in the question of law involved. The question here is whether the "order of the commission complained of is unreasonable or unlawful, as the case may be." Code, art. 23, sec. 408. The facts are undisputed, and the only question for us to decide is whether the order is an unlawful application of, or failure to apply, the provisions of sections 258, 259 and 262A of article 56 of the Code (Code Pub. Gen. Laws [Supp. 1929] art. 56, secs. 258, 259, as amended by Acts 1933, ch. 282, sec. 1, and sec. 262A, as added by Acts 1933, ch. 282, sec. 3), and we conclude as a matter of law that the Farmers' and Dairymen's Association is, on the undisputed facts in the record, operating without a permit in violation of those provisions.

*Decree affirmed.*

BOND, C. J., and URNER, J., dissent.