PUBLIC SERVICE COMMISSION *v.* GEORGE
WEEMS WILLIAMS, Receiver.

[No. 85, October Term, 1933.]

*Decided January 17th, 1934.*

The cause was argued before BOND, C. J., PATTISON, ADKINS, DIGGES, PARKE, and SLOAN, JJ.

*William Cabell Bruce,* for the appellants.

*George Weems Williams* and *William L. Marbury, Jr.,* for the appellee.

*Miles & O'Brien,* submitting on brief, for the Red Star Lines, Inc.

ADKINS, J., delivered the opinion of the Court.

This appeal is from an order overruling a demurrer to the bill of complaint filed by the appellee, under section 359, as amended by Acts 1927, ch. 354, of article 23 of the Code, and section 404, to vacate an order of the appellants granting to Red Star Lines, Inc., permission to operate busses between points on the Eastern Shore of Maryland and Baltimore via the Claiborne-Annapolis Ferry (with the proviso that no passengers should be transported locally in either direction between Baltimore and Annapolis and intermediate points), on the ground that the order was unreasonable and unlawful,

in that it permitted the bus company to invade a noncompetitive field in which the railroad was already furnishing adequate and satisfactory service. The allegations of the bill, as summarized by appellee in his brief, are as follows:

"For twenty-five years the Washington, Baltimore and Annapolis Electric Railroad Company has furnished rail service to Annapolis from Baltimore and Washington. The book value of the railroad property is approximately fifteen million dollars and the system carried approximately 2,500,000 passengers in the year 1932. However, on January 27th, 1931, by reason of inability to meet its fixed charges, a receiver was appointed for the railroad company by the United States District Court for the District of Maryland. Since then its revenues have been steadily declining and it has barely made operating expenses in spite of the fact that the General Assembly has exempted all of the company's railroad property from taxation. For the three months prior to the filing of the bill of complaint there was actually a deficit in operating revenue of between twenty and twenty-five thousand dollars after depreciation and before payment of any interest to bondholders or other fixed charges, except car trust equipment.

"As a part of its service the railroad has been supplying trains which operate through the streets of Annapolis to connect with the ferries plying between Annapolis and Claiborne. In the year 1932 the railroad received from and delivered to the ferry 34,874 passengers bound between Baltimore and the ferry and 6,295 passengers bound between Washington and the ferry. The estimated gross revenue from this business was $30,876.75. When the franchise to operate through the streets of the city expired in July, 1932, the receiver instituted condemnation proceedings to acquire a new franchise and ultimately paid the sum of one thousand dollars therefor with the approval of the United States District Court. The service furnished by the railroad has been adequate and satisfactory and has been a convenience to the traveling public.

"For a number of years Red Star Lines, Inc., has been furnishing connecting bus service from points on the Eastern Shore to Claiborne and through tickets have been sold from Baltimore to various Eastern Shore points via the railroad, the ferry and the bus line. The buses have never been operated on the Western Shore although repeated applications have been made to the Public Service Commission for authority to operate between Annapolis and Baltimore. Early in the year 1933 the application of the bus company was renewed and after a hearing the Commission reversed its prior ruling and granted the bus company a permit to operate between Annapolis and Baltimore with the proviso that no local passengers should be transported between those two cities or intermediate points. The effect of this order is to permit the bus company to parallel a part of the railroad's system and to compete with its service between Baltimore and the ferry. If as a result of the Commission's order any substantial part of the passenger traffic now carried by the railroad is diverted to the bus company, the operating deficit of the railroad will be increased and the day thereby hastened when the bondholders may intervene to put a stop to the operation of the entire railroad system. If this takes place many persons will be deprived of rail service without any substitute therefor."

There was filed with the bill as an exhibit the order of the commission, to which there is a preamble reciting that it was shown, at the hearing on the application for the permit, that the proposed service would provide substantial conveniences and advantages compared with the service now available to persons traveling between the said points and Baltimore, namely, the saving of time, avoidance of baggage handling, protection from inclement weather, and the elimination of the change between bus and ferry at Claiborne and between ferry and train at Annapolis, and that it was the opinion of the commission that a reasonable consideration of the convenience and necessity of persons having occasion to use

such service requires that Red Star Lines, Inc., be permitted to transport to destination, without interruption, all passenger traffic originating on its system, destined for Baltimore, and all such traffic originating at Baltimore, destined to points on its system.

The appellant and the bus company, which was permitted to file a brief, contend that the allegations in the bill were legally insufficient to establish the unlawfulness or unreasonableness of the order; which means, of course, assuming them all to be true.

That is the sole question to be determined. If they are legally sufficient, then the demurrer was properly overruled, notwithstanding the presumption under the statute in favor of the correctness of the commission's decision. For the right of appeal assumes the right of a trial in the appellate tribunal.

The question here is different from that presented in the case of *Baldwin v. Public Service Commission,* 160 Md. 202, 152 A. 907. There the appellant sought, by petition filed with the commission, to have adopted by the telephone company certain regulations suggested by him as tending to prevent such mistakes as those from which he alleged he had suffered, and to prevent improper charges and discriminations. The commission, after a hearing on petition, answer, and testimony, passed an order requiring the company to adopt one of the regulations suggested, and dismissed the petition as to the others. The relief sought by the bill of complaint was that the order of the commission be amended so as to require the company to adopt all the rules suggested by the complainant. A demurrer to the bill was sustained. On appeal this court called attention to the fact that the complaint against the order was not because of any regulation which it presented, but because of the refusal of the commission to adopt rules and regulations proposed by the complainant. It was held that, even if on such a question the decision of the commission was reviewable, the court could not characterize as unlawful or unreasonable the rejection by the commission of the particular rules formulated in the

bill of complaint; that a perusal of them suggested the inquiry whether they might not involve an unduly detailed regulation of the company's business and an inexpedient definition of its responsibility. And it was as to that question that the court said it could not be held that there was no basis for the commission's determination.

In the present case, assuming the allegations of the bill to be true, there is not only the granting of a permit for one transportation company to enter the field of another giving satisfactory service, and offering to supply any deficiency that the commission might suggest, but doing this at the risk of forcing the company already in the field to abandon it, and thus deprive a larger public of the means of convenient access to the capital of the state, and the residents of the capital city and the neighboring country of convenient access to the capital of the nation and the City of Baltimore, in order to enable a comparatively small number of people to save a few steps in changing from the bus to the boat and from the boat to the train. The suggested plan does not give a through ride on a single conveyance, for every one knows that people do not sit for an hour and a half in a bus on the lower deck of a boat in semi-darkness while crossing the bay. There is the same disembarking on one side and re-embarking on the other side of the bay. But, even if that were not so, we would still have the proposition of accommodating a locality at the expense of the general public.

In the note to *Chicago Rys. Co. v. Commerce Commission* (Ill.), 67 A. L. R. 938, it is said: "The general rule is that a certificate may not be granted where there is existing service in operation over the route applied for, unless the service is inadequate, or additional service would benefit the general public, or unless the existing carrier has been given an opportunity to furnish such additional service as may be required"—citing cases from Arkansas, Illinois, Kentucky, Maine, Michigan, Montana, New Jersey, Oklahoma, Pennsylvania, Rhode Island, South Carolina, Utah, Virginia, Washington, and West Virginia.

And in *Public Service Commission v. P., B. & W. R. R. Co.*, 155 Md. 104, 141 A. 509, 517, it is said: "The controlling consideration would be the public interest. * * * And in dealing with the interests of the wider public we do not feel that the action of the commission should be hampered or influenced by the necessity of considering the effect of the improvement on the local public, when its effect on the wider public of which the local public is a part will be beneficial."

On the question of permitting a new utility to enter a noncompetitive territory, where there is an existing adequate and satisfactory service, see cases cited by this court in *Public Service Commission v. Byron,* 153 Md. 464, 488, 138 A. 404, where that case was distinguished on the ground that the utility seeking the right to extend its capacity was not a new carrier, but was on the ground as early as the objecting utility, the origin of both anteceding the Public Service Commission Law (Code, art. 23, sec. 346 *et seq.*). There it was held that there is a wide difference between a request for authority to introduce competition and one to maintain the necessary efficiency of a plant already existing.

We think the allegations in the bill of complaint are sufficient to require an answer, and that the demurrer was properly overruled.

> *Order affirmed, and case remanded, with leave to appellant to file answer within such time as the chancellor may allow.*