CHARLES B. BOSLEY, ET AL. *v.* GEORGE D. QUIGLEY
SAME *v.* SAFFEWAY TRAILS, INC.

[Nos. 110-111, October Term, 1947.]

494

*Decided January 14, 1948.*

The cause was argued before DELAPLAINE, COLLINS, GRASON, HENDERSON, and MARKELL, JJ.

*Joseph R. Byrnes* and *David P. Gordon,* with whom was was *Ralph W. Powers* on the brief for Pennsylvania Greyhound Lines, Inc.

*S. Ralph Warnken* for the Public Service Commission.

*Daryal A. Myse,* with whom were *Hampton Magruder* and *Hewes & Awalt* and *F. G. Awalt* on the brief, for the Capital Transit Company.

*Louis B. Arnold* and *Philip H. Dorsey, Jr.,* for the People.

*Francis J. Ortman,* with whom were *Roberts & Mc-Innis, William A. Roberts* and *G. Kibby Munson* on the brief, for the appellee.

COLLINS, J., delivered the opinion of the Court.

These are two appeals from two orders of the Circuit Court for Prince George's County overruling the demurrers of the public Service Commission of Maryland, the Pennsylvania Greyhound Lines, Inc., (Greyhound) and the Capital Transit Company, (Capital Transit) appellants here, defendants below, to two separate bills, of complaint of the appellees, George D. Quigley, (Quigley) and Safeway Trails, Inc. (Safeway), plaintiffs below, against the Public Service Commission of Maryland.

As the Public Service Commission was the only original defendant, petitions were filed by the Pennsylvania Greyhound Lines, Inc. (Greyhound) and Capital Transit Company (Captial Transit) to intervene as parties defendants in this case, which petitions were granted by the Chancellor.

As these cases come up on demurrers it is necessary that we recite the allegations of the bills in detail. The bill of complaint of Safeway makes many allegations: It is a corporation under the laws of the State of Maryland. Complainant is a common carrier of passengers by motor bus over specified routes between Washington, D. C. and New York City with certain intrastate operating authorities within the State of Maryland. Among other routes within this state, the complainant has authority from the Public Service Commission to operate from Baltimore to the Maryland-District of Columbia line via Route No. 1 and return with the following restriction, "Interstate only except between Baltimore and the southwest side of Hyattsville." Safeway in an effort to obtain appropriate authority from the Public Service Commission of Maryland to provide local service over the Washington-Baltimore Boulevard, for which service there is an existing demand and need, filed an application with the Public Service Commission of Maryland on October 1, 1946, requesting the following authority: "Applicant requests *removal of restriction* in certificate No. 1 in order that it may pick up and discharge passengers between Baltimore, Maryland and the Maryland-District of Columbia line via U. S. Route No. 1 and all intermediate points (32.2 miles). Authority is also requested to serve Savage, Maryland and Elkridge, Maryland, as off-route points." The bill further alleges that the Public Service Commission as provided by Section 388 of Article 23, of the Code, has "jurisdiction and power * * * to grant the permission and approval herein specified whenever it shall, after due hearing, determine that such construction or such exercise of the franchise or privilege is necessary *or* convenient for the public service."

The application of Safeway hereinbefore mentioned was assigned Case No. 4805 by the Public Service Commission of Maryland and was assigned for a hearing before that Commission with the petition filed on behalf of the public which petition (Quigley petition) was as-

signed Case No. 4795. Seven days were consumed in the hearing on the consolidated petitions. Hundreds of bus riders interested in obtaining local service by Safeway over the Washington-Baltimore Boulevard appeared at the hearing and for the sake of convenience fifty-three representatives, witnesses, testified in support of Safeway's application and the people's (Quigley) petition either in their own rights or in an official capacity. Safeway offered thirty-four exhibits including traffic studies of the inadequate local service being rendered by Greyhound and also a traffic study showing available space on the buses of Safeway, which buses could be used to advantage in providing local service over the Washington-Baltimore Boulevard. They also offered economic exhibits showing substantial increases in industry and population and material change in transportation requirements along the Washington-Baltimore Boulevard since 1940. The two cases before the Public Service Commission are alleged to be replete with overwhelming testimony in support of the existence of a public demand and need for local service by Safeway and the continued inadequacy of local service offered by Greyhound, the only common carrier of passengers authorized to use a public highway between College Park and Baltimore in local service.

The bill alleges that on January 22, 1947, two members of the Public Service Commission issued an order, Number 43245 in cases 4795 and 4805, *supra,* which found, contrary to law and fact, that public convenience would not require the removal or modification requested. This order not set out in the bill of complaint was as follows:

"Whereas, protests against the removal or modification of the aforesaid restrictions having been made to the Commission and the said proceedings have come on to be heard, after due notice, and it being the opinion and finding of the Commission, after due hearing, that the public welfare and convenience do not require the removal or modification of the aforesaid restrictions, the Commission hereby expressly confirming the con-

clusions reached by it in similar proceedings in 1940 as expressed in its opinion filed on June 20th, 1940, the Commission now being of the opinion, as it was then, that should the public convenience require the operation of more trips than are now operated by existing carriers authorized to provide local service along the route and in the areas involved, the need could be met more effectively by requiring that such additional needed service be furnished by carriers that are already authorized to provide local service."

The bill alleges that the Commission by this order abused its discretion and acted arbitrarily in denying the petitions of Safeway and Quigley. Quigley asked for and received a re-hearing which provided an opportunity for the parties of record to offer oral argument before the Commission. Safeway through its counsel participated in this oral argument. Order Number 43377 in Case Number 4795, passed March 12, 1947, not set out in the bill of complaint, follows: "Whereas, it is the opinion and finding of the Commission after due consideration of the oral argument that was offered as aforesaid, that no change in or modification of its said Order No. 43245 is justified, particularly as it appears from reports of observations made by members of the Commission's staff that the intrastate motor bus service along the Washington Boulevard between Baltimore and the Maryland-District of Columbia line, which has been the subject of controversy in this case, is adequate."

The bill further alleges that such conclusion by the Commission on unsworn evidence by members of its staff was not only contrary to the overwhelming testimony presented by witnesses who testified under oath and were subject to cross-examination, but is contrary to the rules of evidence and contrary to law in that the Commission's findings are not based upon alleged facts in the record in the proceeding. It is not alleged in the bill that Safeway objected to the reference to observations by members of the Commission's staff or asked leave to cross-examine the members referred to.

It is further alleged that the record in the proceeding contains undisputed evidence that Safeway has been continuously operating in interstate and intrastate commerce in the transportation of passengers, baggage and express over U. S. Highway No. 1 between Washington and Baltimore since 1937 when it succeeded to the rights of its predecessor, Short Line, Inc., of Pennsylvania, to which corporation the initial certificate was issued, May 17, 1933. From June 4, 1942, to September 30, 1945, Safeway participated in providing an unrestricted coordinated local passenger service by motor bus with Greyhound between Baltimore and College Park over U. S. Highway No. 1. As a result of the local services by Greyhound and Safeway during that period the bus-riding public between the Maryland-District of Columbia line and Baltimore enjoyed the adequate bus service to which they are rightfully entitled. The Maryland Public Service Commission pursuant to a requirement of the Office of Defense Transportation authorized complete local transportation between College Park, Maryland and Baltimore in addition to the restricted intrastate service. This authority was withdrawn on September 30, 1945, due to the reduction of War Emergency authority in the Federal Government. As a condition to a compliance with the Office of Defense Transportation orders, allocating frequency of service and requesting interchangeability of tickets, Greyhound had demanded and received from Safeway an agreement that it would not file an application for a certificate to continue the complete local service prior to one year following the expiration of the Office of Defense Transportation authority.

Safeway's application was filed at the earliest date consistent therewith, October 1, 1946, and to the date of the bill of complaint Greyhound has been the only motor bus carrier authorized and required to provide adequate local service between College Park and Baltimore. The need of the local Service of both Greyhound and Safeway is greater than during the Emergency

War period. The population and industry along the Washington-Baltimore Boulevard has increased at least fifty per cent since June 20, 1940. Greyhound is owned and controlled fifty per cent by Pennsylvania Railroad Company and fifty per cent by the Greyhound Corporation. Each of these corporations has large financial resources and Greyhound earned a net revenue after taxes of $2,214,069.00 during the year 1946. The maximum diversion of revenue which would occur by approval of the applications herein would be less than .0075% of the gross revenue of Greyhound which would be largely offset by reduction in the operating expenses, and would not reduce its earnings below a liberal return on the valuation of its property. The total use of buses by local passengers is substantially reduced by reason of inadequate present service of Greyhound and the confusion with respect to the non-availability of the buses of Safeway, and the granting of the petitions would substantially increase the total traffic transported by both carriers and would result in an increase of the revenues for such service available to Greyhound. Safeway could use its equipment which is operating at present over the Washington-Baltimore Boulevard, far below normal capacity, to provide the necessary service without additional expense.

The bill further alleges that the public has been repeatedly inconvenienced by failure of Greyhound to provide adequate local service since October 1, 1945. Both white and colored passengers along the highway have been insulted and abused by the bus operators of Greyhound, who have even failed to pick up passengers on the schedules in the printed time tables. As a result of the public demand for the services of Safeway and complaints to the Public Service Commission, Greyhound began the operation of several buses without a *bona fide* intention of improvement for the purpose of developing a statistical sufficiency of service. As a result of the refusal of Safeway's petition, it has been compelled to operate buses in intrastate and interstate service on

U. S. Highway No. 1 particularly between Hyattsville and Baltimore with loads substantially less than normal capacity. The termination of its local services resulted in a decline in revenues equal to $10,000.00 per month and a heavy loss since October 1, 1945. The refusal of Safeway's petition impairs its ability to provide its authorized intrastate and interstate services and constitutes a material burden on interstate commerce.

On the day when the Commission denied the relief sought by Safeway and Quigley, it directed an order to Greyhound finding that the operators of its buses had been guilty of discourtesy and a failure to pick up passengers, and the operation of the terminals of the company with respect to information was not satisfactory, and the attitude and conduct of employees of Greyhound was below standard. The Commission directed Greyhound to remove all possible cause of complaint and to provide the public at all times with satisfactory service. Similar action had been taken by the Commission when earlier public complaints had been made, without remedial action by Greyhound. In view of the record in these proceedings the Public Service Commission erred as a matter of law in its findings of January 22, 1947 aforesaid. The facts of record in the 1940 proceedings referred to in the Commission's order, were substantially different from the facts of record here. The Commission erred as a matter of law in denying Safeway's petition. The granting of this petition would serve the best interests of the public as required by the Public Service Commission Law of Maryland.

The petition asked, (1) That Order No. 43245 of the Public Service Commission dated January 22, 1947, be vacated, set aside and declared unlawful because of want of power and authority in the Commission to make this order, because it is contrary to law in that the Commission abused its discretion and acted arbitrarily and capriciously in denying the complainants' petition. The bill of complaint also asked, (2) That the Court find that the operation proposed by the application in cases No.

4795 and 4805 was justified and demanded by public convenience or necessity and that the Commission acted unlawfully in denying the petition of the complainant. The bill also asked, (3) for other and further relief.

The bill of complaint of George D. Quigley (Quigley) alleged that he was a citizen of the State of Maryland, a resident of Anne Arundel County, and a user of motor bus service along the Washington-Baltimore Boulevard between Baltimore and the Maryland-District of Columbia line and presents the action on his own behalf and on the behalf of other users of motor bus service on the Washington-Baltimore Boulevard similarly affected. He alleges that in his own behalf or on the behalf of others he filed a petition with the Public Service Commission seeking a renewal of intrastate bus service by Safeway as specified in Safeway's bill of complaint. He says that this petition was accompanied by the signatures of more than 1,000 persons in addition to endorsements of civic organizations and the municipal authorities of all incorporated towns in Prince George's County which border on the highway involved and this petition was also endorsed by the County Commissioners of Howard County. His allegations that the service of Greyhound was wholly inadequate and inconvenient were substantially the same as those contained in Safeway's bill. All of the allegations similar to those made by Safeway will not be detailed again here. Some pertinent allegations which were not contained in Safeway's bill follow: The Greyhound continually passed up passengers who were waiting for a long time along the highway without adequate protection in all kinds of weather. When Greyhound buses stopped they were usually so crowded that the tired passengers were compelled to stand up during the entire trip. Although Greyhound for the purpose of a lack of profit, ran double and extra buses, these doubles and extras failed to pick up the waiting passengers. The public has received discourteous and insulting treatment from the employees of Greyhound. Greyhound has stated that it was unable to meet

the public demand because it had difficulty in obtaining equipment and personnel. Greyhound utterly failed to produce any evidence and not a single community or organization appeared in its behalf. The Public Service Commission arbitrarily ignored and disregarded the testimony of all the witnesses. During the hearing the defendant, Charles B. Bosley, stated on a certain day subsequent to the original hearing he and the defendant, Arthur H. Brice, had seen a number of Greyhound buses running between College Park and Caton Avenue, near Baltimore, as proof of a presumed adequate service on the part of the Greyhound company. No opportunity was afforded to cross-examine these two defendants. It is not alleged in the bill that opportunity to cross-examine was asked. The defendants have utterly failed and refused to recognize the convenience of the public. During a snow storm many persons were left standing in freezing weather because the Greyhound buses were either too crowded or unable to get through, while Safeway buses were prevented from picking up these passengers and carrying them to their homes. In December, 1945, Greyhound employees went on strike. It was only through good fortune that Safeway facilities were available at a great loss, to serve the public. Unless Safeway is permitted to make use of some of its half-empty buses proceeding along the Boulevard it will be necessary to withdraw some of these facilities and no longer will they be available for the public use. It characterizes the action of the Commission as arbitrary, unlawful, unreasonable, and contrary to the public necessity. It states that there exists an urgent public need for the granting of the petition of Safeway. It asks (1) That the order of the Public Service Commission denying the application of Safeway be vacated, set aside, annulled, and declared to be unreasonable and unlawful. It asks (2) That the Public Service Commission be directed to issue an order granting the relief sought by them by the restoration of bus service of both

carriers along the Washington-Baltimore Boulevard and (3) for other and further relief.

Demurrers were filed by the Public Service Commission, Greyhound and Capital Transit to each bill of complaint. On September 6, 1947, the Chancellor passed orders overruling the demurrers of each of the defendants to the bills of complaint filed, and from those orders the appellants appealed.

Appellants contend (1) that Quigley is not a person or party in interest authorized by Sections 359 and 415 of Article 23 of the Code to institute proceedings in the Courts to vacate or set aside the orders of the Commission. (2) That Safeway has no interest in the actions of the Commission challenged in its bill of complaint sufficient to justify the intervention of the Courts. (3) Neither bill of complaint clearly and satisfactorily alleges facts from which it would follow that the orders of the Commission in question are unreasonable or unlawful. The allegations are merely conclusions. We will first discuss the third contention of the appellants.

Code, Article 56, Section 304, provides in part as follows: "It shall be the duty of the Public Service Commission of Maryland, upon the application of any motor vehicle owner for a permit to operate any motor vehicle for the public transportation of passengers over any specified route, to investigate the expediency of granting said permit; the number of motor vehicles to be used, and the rate to be charged, and if, in the judgment of the Public Service Commission, it is deemed best for public welfare and convenience that said permit should be granted, said Public Service Commission is hereby empowered and authorized to grant such permit subject to such reasonable conditions and terms, and for such duration of time, not exceeding the period of twenty years, as it may deem advisable, * * *". Code, Article 23, Section 388, provides that no common carrier shall exercise any franchise without having first obtained the permission and approval of the Public Service Commission. By that article and section the Commission has

power to grant such permission "whenever it shall, after due hearing, determine that * * * exercise of the franchise or privilege is necessary or convenient for the public service."

By Code, Article 23, Section 359, the right is given to any party in interest "to proceed in the courts to vacate, set aside or have modified any order of said Commission on the grounds that such order is unreasonable or unlawful * * *." By Code, Article 23, Section 415 any corporation and any person in interest dissatisfied with any order of the Public Service Commission as to rates, schedules, or practices may commence any action in the Circuit Court for any county or before any judge of the Supreme Bench of Baltimore City to vacate and set aside any such order on the ground that it is unlawful or unreasonable.

By Code, Article 23, Section 419, the burden of proof is upon the party adverse to the Public Service Commission "to show by clear and satisfactory evidence that the determination, requirement, direction or order of the commission complained of is unreasonable or unlawful, as the case may be." As was said in *Public Service Commission v. Byron,* 153 Md. 464, at pages 479 and 480, 138 A. 404, at page 410, in referring to an order of the Public Service Commission: "The first rule is the order will not be disturbed except upon clear and satisfactory evidence that it is unreasonable or unlawful. This is a legislative mandate which is reinforced by the fact that the commission is a tribunal erected by law, informed by experience, and assisted by a trained corps of subordinates. Code, art. 23, sec. 408; *Public Service Commn. v. Northern Central Ry. Co.,* 122 Md. 355, 388, 391, 392, 90 A. 105; *Havre de Grace Bridge Co. v. Public Service Comm.,* 132 Md. 16, 24 103 A. 319; *Interstate Commerce Commn. v. Union Pac. Ry. Co.,* 222 U. S. 541, 32 S. Ct. 108, 56 L. Ed. 308." In determining what is necessary or convenient for the public service the general public as a whole must be considered rather than the accommodation of a locality. *Public Service Commis-*

*sion v. Williams,* 166 Md. 277, 282, 283, 170 A. 517. It is within our power only to vacate or set aside the orders. This is prayed in both bills. It was said by this Court in *Public Service Commission v. Byron, supra,* at page 474 of 153 Md., page 408 of 138 A., in reference to an order of the Public Service Commission: "Here the contemplated proceeding can only vacate or set aside the order for either its unlawfulness or its unreasonableness. If it be invalid on either specified ground, it is so because of the nature or the form of the commission's order, which no court has power to alter, change, modify, or substitute its own decree, but can only accept or reject the order in the form finally formulated by the commission."

These cases coming up on demurrer, facts well pleaded, are admitted. The bills of complaint before us here allege substantially that a large number of witnesses testified that on account of the infrequency of the bus service, the discourtesy of the employees, the overcrowding of the buses, and the failure of Greyhound to adhere to its schedules, its service is inadequate. What is adequate is a matter of opinion. The witnesses may have thought that buses should run every five minutes while the Public Service Commission could reasonably have taken a different view. The witnesses may have thought that by putting Safeway in competition with Greyhound the discourtesy of the employees and the overcrowding of the buses would be avoided. The Public Service Commission could reasonably have had a different opinion as to these matters. There is no allegation in the bill of complaint that Greyhound is making a profit on the local operation complained of. The Commission may reasonably have concluded that by putting Safeway in competition with Greyhound neither of these companies would make profits on this local business, which would result in a cutting of operation, which would mean less adequate service. According to the bill of complaint, on the day of January 22, 1947, when the Commission denied the petitions in these cases, it found that the need

could be more effectively met by requiring such additional service to be furnished by the carriers already authorized to provide the local service, and on that same day directed an order to Greyhound finding that the operators of the buses had been guilty of discourtesy and failure to pick up passengers, also that the service of Greyhound with respect to information was not satisfactory, and the attitude and conduct of their employees were below standard. As a general rule competition will not be authorized unless the service is inadequate, or additional service would benefit the public, or unless the existing carrier has been given an opportunity to furnish such service as may be required. *Public Service Commission v. Williams,* 166 Md. 277, 282, 170 A. 517. Neither the Safeway application nor the Quigley petition to the Commission asked that Greyhound be required to give more adequate service.

There is no allegation in the bill of complaint that frequency of the buses has not been increased since the growth of the population since 1940. It is admitted by the appellees that the burden of proof is upon them to show that the orders of the Commission were unreasonable or unlawful. The Court cannot substitute its judgment for the judgment of the Commission. It may be that had we been sitting in place of the Commission we might have passed different orders. However, we cannot substitute our judgment for that of the Commission. We cannot say that the public welfare and convenience demanded competition from Safeway. There are too many factors to be considered in this heavily populated area located between two large cities. We can only decide whether there is clear and satisfactory evidence that the refusal of the petitions by the Commission was unlawful or unreasonable.

As was said in the case of *Crisfield v. Public Service Commission,* 183 Md. 179, at page 186, 36 A. 2d 705 at page 708: "As a fact-finding body, representing the State in the supervision and control of public utilities corporations, the Public Service Commission has been

provided by the Legislature with a staff of trained assistants and specialists for the very purpose of furnishing a sound foundation of facts for every finding by the Commission. The Courts have no such facilities or equipment to function in this field of governmental control over public utilities, and will not disturb the Commission's findings where there appears substantial evidence to support them. *Public Service Commission v. Byron*, 153 Md. 464, 471, 138 A. 404; *Baldwin v. Public Service Comm.*, 160 Md. 202, 152 A. 907; *Public Service Comm. v. Williams*, 167 Md. 316, 173 A. 259."

Of course, the Commission being a *quasi* judicial tribunal must act solely on the evidence before it, and not on knowledge or information otherwise acquired by it but not offered in evidence. *Hyman v. Tyler*, 188 Md. 301, 52 A. 2d 610, 612, and cases cited.

As hereinbefore set forth, it is the duty of the Public Service Commission in determining what is necessary and convenient for the public service to consider the general public as a whole rather than the accommodations of a locality. The Commission evidently has found that the public as a whole would be harmed rather than benefitted by allowing Safeway to compete with Greyhound on the route requested. There is no basis for us to say otherwise. If the Commission on March 12, 1947, improperly considered observations by its own members or members of its staff, not offered in evidence, this would not invalidate its original order.

The Legislature has entrusted the duty and the discretion of passing upon permits and franchises to the Public Service Commission. Competition is a legislative question, not one for the judiciary, unless the decision is shown to be unreasonable or arbitrary. In the case at bar, as in many other cases, the Commission has deemed the regulated monopoly the best method of providing transportation for the welfare and convenience of the public as a whole. As we have said, this is the general rule. *Public Service Commission v. Williams, supra.* It is unprecedented as far as we have been able to de-

termine for the courts to say that the Public Service Commission should grant competition where that Commission has found that there is an adequate service or one which by direction of the Commission could be made adequate. *Public Service Commission v. Byron, supra; Public Service Commission v. Williams,* 166 Md. 277, 282, 170 A. 517; *Public Service Commission v. Williams,* 167 Md. 316, 333, 173 A. 259; *Mayor and Council of Crisfield v. Public Service Commission,* 183 Md. 179, 36 A. 2d 705; *Re Theel Bros. Rapid Transit Co.,* 1942, 72 N. D. 280, 6 N. W. 2d 560; *Virginia Stage Lines v. Commonwealth,* 1946, 185 Va. 390, 38 S. E. 2d 576; *Red Diamond Bus Line Co. v. Cannon Ball Trans. Co.,* 1930, 233 Ky. 482, 26 S. W. 2d 28; *Wilcox Trans. Co. v. Commerce Commission,* 1928, 328 Ill. 455, 159 N. E. 788. This is what the courts are asked to do in the instant cases.

It has been considered better to have one responsible carrier which for the sake of public convenience could be required to run some unprofitable schedules needed by the public, than to have two companies struggling for profits at the expense of the public. *Rutledge Assn. v. Baughman,* 153 Md. 297, 138 A. 29, 56 A. L. R. 1042; *Chicago Motor Bus Co. v. Chicago State Co.,* 1919, 287 Ill. 320, 122 N. E. 477; *State v. Atkinson,* 1918, 275 Mo. 325, 204 S. W. 897, 899; *Corporation Commission v. Peoples Freight Line, Inc.,* 1932, 41 Ariz. 158, 16 P. 2d 420, 422, 423.

The appellees refer us to the case of *A. B. C. Motor Bus Trans. Company, Inc., et al. v. Interstate Commerce Commission, D. C.,* 69 F. Supp. 166, where a carrier was granted rights in competition with existing carriers. However, in that case the Commission decided that the competition should be granted for public convenience and necessity and the Court merely affirmed the action of the Commission.

The appellees rely strongly on the case of *Dunlap et al. v. Dixie Greyhound Lines, Inc.,* 178 Tenn. 532, 160 S. W. 2d 413, decided April 4, 1942. In that case the Chancellor held the order of the Railroad and Public Utilities

Commission of Tennessee granting a certificate for competition void because not supported by material evidence. The Supreme Court of Tennessee reversed the decree of the Chancellor and affirmed the order of the Commission. That case is not in point here, where we are asked to vacate the order of the Commission and pass another order.

In the case of *Hartman et al. v. Public Service Commission,* 179 Md. 285, 19 A. 2d 709, an application was made by *Hartman, et al. and the Baltimore Transit Company* for a certain designated route upon the streets of Baltimore City where the transit company was already operating a passenger transportation system. The Commission granted the application of the Baltimore Transit Company to extend its lines over the route contested. The amended bill of the complaint alleged that Hartman had filed an application for a permit to operate a passenger motor vehicle common carrier service in Baltimore City over a route described therein. The hearing before the Public Service Commission consumed five days and numerous witnesses testified that the service which Hartman proposed to render was sorely needed, that the witnesses had been unable to induce the Transit Company over a period of years to furnish the service and that according to the testimony of these witnesses such service would definitely serve the public welfare and convenience; that if their application was granted it would save time in traveling from one section of the city to another, would shorten the distance, and decrease the fares to one-half that charged by others rendering similar service. The amended bill of complaint further alleged "that the action of the Commission is contrary to law, arbitrary, contrary to public welfare and convenience, ignores public welfare and convenience and substitutes the convenience of the Baltimore Transit Company, for public welfare and convenience and determines that the needs of the public must await the pleasure of the Transit Company." In affirming the Chancellor in sustaining a demurer to the bill of complaint this

Court said at pages 290 and 291 of 179 Md., pages 712 of 19 A. 2d, which is very pertinent here: "Reference has heretofore been made to the allegations of the amended bill of complaint, and in their consideration this Court must not be unmindful that we have no power to substitute our judgment for the judgment of the Commission, whose orders are *prima facie* correct, and to which body the Legislature had intrusted the duty and discretion of hearing and passing upon the permit under consideration. *This task necessarily involves a consideration of many elements, such as advisability, practicability, public necessity, convenience and benefit to the public as a whole.* To justify us in holding the amended bill of complaint good as against demurrer, its allegations must clearly and satisfactorily allege facts from which it would follow that the order was unreasonable, and in this case it cannot, in our judgment, be held that the amended bill of complaint meets the necessary requirements. After all, its allegations seem to be no more than to set forth that at the hearing before the Commission, appellants and the Baltimore Transit Company both had applications to serve certain territory by passenger motor bus lines, and that the Commission, notwithstanding appellants' witnesses felt and testified that their permit should be granted, denied a permit to appellants, but did grant one to the Baltimore Transit Company. But necessarily the Commission had to refuse one or both permits and *the mere fact that appellants' witnesses honestly felt that their plan was feasible would not bind the Commission to its acceptance,* nor would it follow because the Commission refused the permit. that its action was unreasonable, arbitrary or unjust. See *Public Service Commission v. Byron,* 153 Md. 464, 138 A. 404; *Public Service Commission v. Williams,* 167 Md. 316, 329, 173 A. 259; An Article of Reuben Oppenheimer, Esquire, on '*Administrative Law in Maryland*', Maryland Law Review, April, 1938, Vol. 2, No. 3; *Howard Sports Daily v. Public Service Commis-*

*sion,* 179 Md. 355, 18 A. 2d 210, and authorities there cited." (Italics supplied here.)

For the reasons hereinbefore given and under the authorities hereinbefore cited, we are of opinion that the bills of complaint do not allege clear and satisfactory evidence that the orders complained of are unlawful or unreasonable. Therefore, the orders of the Chancellor overruling the demurrers to the bills of complaint must be reversed, and the bills dismissed.

As we find the allegations of the bills of complaint inadequate, we leave open the question as to whether the appellees had such an interest as entitled them to bring these actions.

> *Orders overruling demurrers reversed with costs, and bills of complaint dismissed.*