## TIDEWATER EXPRESS LINES, INC. ET AL. *v.* PUBLIC SERVICE COMMISSION ET AL.

[No. 121, October Term, 1951.]

534

*Decided March 13, 1952.*

The cause was argued before MARBURY, C. J., and DELAPLAINE, COLLINS, HENDERSON and MARKELL, JJ.

*Thomas J. Tingley* and *John Wesley Smith* for the appellants.

*William H. Hudgins,* with whom was *Joseph M. Wyatt* on the brief, for City Express, Inc.

*Charles D. Harris, General Counsel,* for the Public Service Commission of Maryland.

MARKELL, J., delivered the opinion of the Court.

This is an appeal from an order dismissing a bill for injunction to set aside an order of the Public Service Commission which granted the application of City Express, Inc., for permits for the operation of motor vehicles for use in transportation of Coca-Cola products only from Baltimore to Cumberland and from Baltimore to Salisbury by specified routes. The Commission's order recites that "the public welfare and convenience requires the granting of the permits". The Commission filed no opinion. The permits were granted under Art. 56, sec. 312, of the Code, which relates to "contract carriers" (not so called in the statute) and is, it was said at the argument, the only statutory provision that gives the Commission any authority over carriers other than common carriers or indeed over any person not engaged in serving the general public. Plaintiffs are common carriers of freight by motor vehicles. They hold permits under Art. 56, sec. 311. Section 311 refers to intrastate "public transportation" over State roads and other specified roads and streets; section 312 refers to motor vehicles operating "on regular schedules or between fixed termini", (elsewhere defined by statute),

and expressly provides, "The public duties of a common carrier shall not be imposed on the owner of any such vehicle not actually engaged in public transportation", and contains specific exceptions from the general terms of the section. The six plaintiffs respectively operate between Baltimore and Cumberland or Baltimore and Salisbury (or over parts of these routes), at least two of them between each of these *termini*. For some years City has been carrying Coca-Cola products, as a private carrier, to as large an extent as possible within the exceptions and without a permit under section 312. Some or all of plaintiffs have, from time to time, carried Coca-Cola products which City could not so carry. In the past there has been protracted litigation between plaintiffs, or some of them, and City before the Commission. The Commission twice found that City was operating without authority in plaintiffs' territory and ordered it to cease and desist from doing so.

City filed with its application to the Commission, as required by the statute and by the Commission, a copy of its rate and service agreement with the Coca-Cola Company. The statute does not in terms empower the Commission to regulate rates of contract carriers. None of the parties here asserts that the Commission has power to do so. Coca-Cola Company under the agreement obtains lower rates than it had obtained from plaintiffs, viz., rates on a mileage basis instead of a weight basis. There is substantial evidence that for the special needs of Coca-Cola Company the service of a special contract carrier, such as City, is preferable to common carrier service, (1) in satisfying customer demand for fresh products by prompt delivery, (2) in capital saving of investment in costly stainless steel drums by prompt returns of these containers, (3) in efficiency and economy by shipping most of its products by City. Plaintiffs say, in effect, that these alleged advantages are a sham and the only real advantage is saving in rates, which is a form of destructive competition that section 312 was designed to prevent, and that

there has been little or no complaint, especially to the Commission, of service of common carriers in carrying Coca-Cola products. There is, on the other hand, testimony as to complaints by Coca-Cola customers direct to Coca-Cola Company. Controversy as to the extent of complaints seems largely beside the point. If for the special needs of Coca-Cola Company special contract service is better than common carrier service, this would not necessarily be ground of complaint. If an owner decided to replace a Ford with a Cadillac—or a Lincoln—there would be no occasion to "complain" that a Ford is not a Cadillac—and the Ford dealer would be the first to admit that a Ford is not a Lincoln. The fact that City rates to Coca-Cola Company are lower than common carrier rates is not evidence that the lower rates are unfair, or do not fairly reflect differences between the cost of common carrier service and City service to Coca-Cola Company. Indeed the testimony as to Coca-Cola's need for on-the-minute service, whenever and wherever needed, indicates that common carrier service is not adapted to Coca-Cola Company's needs, and that a common carrier serving all customers alike could not give all—or any—the kind of service Coca-Cola Company needs. In other words, plaintiffs and City are rendering different services and what Coca-Cola Company needs is not common carrier service but the special contract service furnished by City. On any or all of these questions of fact there is substantial evidence against plaintiffs' contentions. In all these respects the Commission's action is supported by substantial evidence. When the Commission's action is thus supported, we have no occasion to weigh opposing evidence—or to consider whether the evidence would have been legally sufficient to support an opposite conclusion by the Commission.

Sections 311 and 315 of Article 56 originated in Chapter 714, of the Acts of 1916, section 312 in Chapter 291 of the Acts of 1924. Section 315 directs the Commission to issue the permit provided for in section 311

if, in the judgment of the Commission, it is deemed best "for publc welfare and convenience" that the permit be issued. Section 312 provides that motor vehicles operating for hire over improved roads and streets "on regular schedules or between fixed termini . . . shall be subject to the provisions of this subtitle [which includes section 315]."

Plaintiffs contend, earnestly and elaborately, that the Commission in regarding the "public welfare and convenience", under section 315, as the standard for their action under section 312, used an incorrect standard. They contend that section 312 prescribes no standard and, to save the validity of section 312, there should be read into it "in the public interest" or "not detrimental to the public", as was done by this court with respect to Art. 23, sec. 405, in *Electric Public Utilities Co. v. Public Service Commission,* 154 Md. 445, 140 A. 840, or "required by, or consistent with, the public interest" which, by Chapter 520 of the Acts of 1929 was enacted as applicable to section 405 and several other sections of Article 23. We agree with Judge Niles (who heard the instant case on demurrer) that the standard "public welfare and convenience" in section 315 is embodied by reference in section 312, subject to the express provisions of section 312 and to the intrinsic differences between a "contract carrier" and a common carrier. In *Baltimore & Annapolis Railroad Co. v. Lichtenberg,* 176 Md. 383, 4 A. 2d 734, this court gave this construction to sections 293, 295, and 304, the sections relating to carriage of passengers which respectively correspond to sections 311, 312 and 315 relating to carriage of freight. This does not mean that "the public welfare and convenience" must necessarily require the same action on an application under section 312 as on one under section 311. We may add that we agree with both Judge Niles and Judge Tucker (who sat at the final hearing) that the distinction between "the public welfare and convenience" and "in the public interest" or "not detrimental to the public" or "required by, or consistent with, the

public interest" is a distinction without a difference and could lead nowhere. If in the instant case the Commission's action was (as the Commission found it was) required by "the public welfare and convenience", then it was "in the public interest", "not detrimental to the public" and was both "required by, *and* consistent with, the public interest".

Plaintiffs' basic contention is that the Commission's order is contrary to the purpose of section 312 to prevent destructive competition. In *Rutledge Co-operative Association Inc. v. Baughman,* 153 Md. 297, 302, 305, in sustaining the validity of section 312, this court said (referring to the Public Service Commission Law and to the section which is now section 311), "The purpose of the former was to insure reasonable rates and adequate service from common carriers, while the purpose of the latter was to aid that purpose by preventing destructive competition, whether by private or common carriers operating over public highways", and, (referring to the plaintiff, a private contract carrier), "Its business requires it to use for private gain the public highways of the state, which are maintained by the general public. The incidental effects of its operation are identical with those of common carriers operating under section 258 [now 311], article 56, of the Code, the wear and tear on the highways is the same, the danger to the traveling public is the same, the difficulty of maintaining reasonable rates and adequate service in the face of severe and exhausting competition is the same, and the appropriation of public property for private gain is the same." In *Michigan Public Utilities Commission v. Duke,* 266 U. S. 570, 45 S. Ct. 191, 69 L. Ed. 445, and *Frost Trucking Co. v. Railroad Commission,* 271 U. S. 583, 46 S. Ct. 605, 70 L. Ed. 1101, the court had held unconstitutional state statutes which purported to make all private contract carriers common carriers and to require them to obtain permits as such. This court distinguished section 312 in that it contains no such requirement but expressly provides to the contrary. In *Smith v. Cahoon,*

283 U. S. 553, 51 S. Ct. 582, 75 L. Ed. 1264, the court held unconstitutional a Florida statute which did not require a private contract carrier to become a common carrier, but made elaborate provisions as to both, without providing which should apply to private carriers as well as common carriers. In *Sproles v. Binford,* 286 U. S. 374, 52 S. Ct. 581, 76 L. Ed. 1167, *Stephenson v. Binford,* 287 U. S. 251, 53 S. Ct. 181, 77 L. Ed. 288, and later cases, the court has sustained the constitutionality of state statutes which make requirements of contract carriers similar to section 312 and also additional requirements, in the Stephenson case a requirement that the contract carriers should charge rates not less than the railroad rates for services mentioned. These decisions were based primarily on the power of the state over its own improved roads and the absence of an obligation to furnish private carriers an improved highway to compete with regulated common carriers. In the instant case no question has been raised as to the power of the Commission. It is, however, to be noted, (*a*) that the power of the state over private contract carriers is, in some respects at least, not as broad as its power over common carriers, and (*b*) that the power conferred upon the Commission by section 312 is somewhat narrowly limited.

If we assume that under section 312 it is the duty of the Commission, in exercising the power to grant or refuse permits, to prevent destructive competition, this duty is at most one of "imperfect obligation", not defined in the statute, but dependent upon the Commission's finding of facts as to the "public welfare and convenience" —or plaintiffs' synonyms for this expression. The opinions of this court and of the Supreme Court, and the statutes involved in the Supreme Court cases illustrate the well-known fact that the destructive competition primarily to be prevented by regulation of both common carriers and contract carriers by motor vehicle was competition of trucks and buses with railroads. In *Public Service Commission v. Williams,* 166 Md. 277,

170 A. 517, this court held that on demurrer the bill showed that the Commission's grant of a permit was unreasonable in this respect. In *Public Service Commission v. Williams,* 167 Md. 316, 173 A. 259, it was held that on final hearing on the facts the same action of the Commission was not shown to be unreasonable. In those cases the railroad in question was desperately in need of protection against competition. In the instant case apparently all the plaintiffs are in competition with one or more of the others as well as with the railroads serving their territories. To say the least, plaintiffs have failed to show any abuse of power by the Commission, in granting permits to City, as a contract carrier, to render a service which Coca-Cola says, with the support of substantial evidence, it needs and cannot get from common carriers, and in not protecting six common carriers, all of whom are in competition with some of the others, against competition from a needed contract carrier.

*Decree affirmed with costs.*